HONORABLE LAUREN KING

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BEVERLY JANE CARY, <br><br> Debtor, | Dist Ct. Case 2:22-cv-00538-LK <br><br> Chapter 13 Case No. 20-12450 TWD |
| BEVERLY JANE CARY <br><br> vs. | Adversary Case No. <br><br> PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT |
| PATCH SERVICES, LLC d/b/a NOAH; PATCH HOMES, INC.; FIRST AMERICAN TITLE INSURANCE COMPANY LENDERS ADVANTAGE, <br><br> Defendants. | NOTED FOR CONSIDERATION: June 24, 2022 |

## I.  INTRODUCTION / RELEVANT FACTS

Defendant First American Title Insurance Company ("FATIC") asserts in their Motion to Dismiss for Failure to State a Claim, that the Second Amended Complaint (the "SAC") filed on March 4, 2022 was filed inappropriately without leave of court (Dkt No. 10 at p. 2), This argument is also made in FATIC's Motion to Strike Second Amended Complaint (Dkt No 12). Additionally, FATIC argues in its Motion to Dismiss for Failure to State a Claim that the Sixth Cause of Action for violation of the Escrow Agent Registration Act (the "ERA"), RCW 18.44 *et seq.*, is not an actionable claim for a private individual, that the SAC does not allege any

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

fraudulent allegations and that a pure violation of the ERA statute cannot be a *per se* violation of the Washington's Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*, (*Id.* at p. 5 It further alleges that claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. fail as a matter of law ((*Id.* at p. 5).  To address these issues, Plaintiff moves for leave to file her Third Amended Complaint, to add additional facts that will clarify her claims against FATIC and Patch Services, LLC d/b/a Noah and Patch Homes, Inc. (the "Patch Defendants") related to the ERA, the CPA violations based on the unlawful imposition of the mandatory arbitration clause prohibited under TILA, and to substantiate Plaintiff's damages and injury claims. Ms. Cary's Motion seeking leave to amend now should simplify the Court's review of FATIC's Motion to Dismiss, as it should resolve a number of issues addressed in that Motion.

## II.  BACKGROUND

### A.  Procedural History.

Plaintiff filed her Complaint in this case on January 18, 2022 in the Western District of Washington, U.S. Bankruptcy Court as an Adversary Proceeding under Adv. Case No. 2-01000-TWD. *See* Ex. 1 to Request for Judicial Notice[i]. On February 19, 2022, Plaintiff filed an Amended Complaint which in hindsight should have been filed as a praecipe, as it was only filed to make clear that the Complaint was also an Objection to Claim under the Bankruptcy Code along with other minor technical changes.  *Id.*, Ex. 2 at p. 2. Thereafter, the SAC was filed on March 4, 2022 with substantive changes and only that version of the Complaint was served on all Defendants on March 09, 2022. *Id.*, Ex. 3. A review of FRBP 7015, which incorporates FRCP 15, only requires a Motion for Leave to Amend a Complaint: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

is earlier. FRBP 7015(a)(1). Since none of the Defendants had been served when the SAC was filed, no responsive pleadings had been filed and only thirteen (13) days had passed since the filing of the first Amended Complaint. it did not appear to Plaintiff that a motion for leave to amend was required. *Id*. After the SAC was filed, Plaintiff specifically referenced it as a "Second Amended Complaint" in a Letter Requesting Reisuance of the Summons. *Id*., Ex 5. A second Summons was issued by the Court on March 07, 2022 and service was initiated on behalf of Plaintiff right away.  *Id.* Ex. 5. Since then, the parties conferred and stipulated to the Allowance of Withdrawal of the Reference to this Court on April 15, 2022. *Id.*, Ex. 6. This Court entered its Order withdrawing the reference on May 18, 2022. *Id.*, Ex. 7. During this time period, the Patch Defendants also filed an Answer to the SAC with the Bankruptcy Court on April 29, 2022. *Id.*, Ex. 8.

**B.  Changes in the Third Amended Complaint.**

The Proposed Third Amended Complaint ("TAC"), attached hereto as Exhibit A, includes language edits in the caption and the first paragraph to clarify the intended claims under the ERA, and changes to clarify the role of FATIC in the transaction with the Plaintiff. *See* Exhibit A at ¶¶ 2.28 and 2.29. Additional factual details about the damages and injury asserted by Plaintiff are clarified, along with substantial changes to the Sixth Cause of Action for violations of the ERA to make clear that the violations of the CPA asserted were not pled as *per se* CPA violations. *See Id.* at ¶¶ 3.29 and 3.30. *See also,* Exhibit B, which is a red-lined version of the TAC. Notably, there was no *per se* language used in that Cause of Action in the SAC, but since FATIC apparently read that into the pleadings, Plaintiff sought to make this even more clear. Other substantive changes include some clarifying language in the Ninth Cause of Action regarding FATIC's CPA violation regarding the imposition of an arbitration clause. *See Id.* at ¶¶

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

3.44 and 3.47. With these changes, Plaintiff now timely requests leave to file this Third Amended Complaint.

### III. ARGUMENT

When more than twenty-one days have passed since service of the original complaint, or when more than twenty-one days have passed after service of a responsive pleading or after service of a motion under Fed. R. Civ. P. 12(b), (e), or (f), a plaintiff may amend his or her pleading only with the opposing party's consent or upon obtaining leave of court. Fed. R. Civ. P. 15(a)(2).

Because there has not yet been an Order entered in this case setting a case schedule with a deadline for amended pleadings, the only civil rule that applies to this Motion is Rule 15.[1] "Under Rule 15, the court should 'freely give' leave to amend a pleading 'when justice so requires.'" *Espinoza,* 2019 WL 5079950, at *2. This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003).

Five factors are used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party (4) futility of amendment, and (5) whether the party has previously amended its pleading. *Espinoza,* 2019 WL 5079950, at *3 (citation omitted). Of these factors, the consideration of prejudice to the opposing party carries the greatest weight. *Eminence Capital, LLC,* 316 F.3d at 1052 (9th Cir. 2003).[2] If a court does not find prejudice or a "strong showing," there is a "presumption" under Rule 15 in favor of granting leave to amend. *Id.* Prejudice must be substantial for leave to be denied. *Morongo Band of Mission Indians v. Rose,*

---

[1] Where there has been an amended pleading deadline established by a case scheduling order, under Fed. R. Civ. P. 16, a party who seeks to amend its pleadings subsequent to that deadline must show good cause to justify a modification of the case schedule. *Espinoza v. City of Seattle,* No. C17-1709JLR, 2019 WL 5079950, at *2 (W.D. Wash. Oct. 9, 2019).

[2] Delay alone is generally insufficient justification for denying a motion to amend unless the court also specifically finds prejudice to the opposing party, bad faith of the party seeking to amend, or futility of amendment. *Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir. 1999).

PLAINTIFF'S MOTION FOR LEAVE TO FILE 3rd
AMENDED COMPLAINT
Page 4 of 8

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

893 F.2d 1074, 1079 (9th Cir. 1990).

**A.     Plaintiff Is Entitled To Amend Her Complaint Because There is No Evidence of Bad Faith or Dilatory Motive.**

The Defendants will suffer no prejudice if the Court grants Plaintiff's request to file her Third Amended Complaint. Discovery has not commenced, and there is still no case scheduling order, discovery deadline, or trial date. The FATIC Defendants have not yet answered Plaintiff's SAC and need not answer it pending the Court's resolution of this Motion. The Patch Defendants did file an Answer on April 29, 2022 in the bankruptcy case (Dkt. 13), but they would be permitted to amend their Answer if this Court grants Plaintiff's Motion. FRCP 15(a)(3). Additionally, in light of FATIC's pending Rule 12(b)(6) motion, the Court's approval of this Mmotion may alleviate many of the issues in the that motion and in any event, under the Rule 12(b)(6), leave to amend should be liberally granted. For Rule 12(b)(6) motions, a court must assume the truth of the facts pled in the complaint and construe all reasonable inferences drawn from these facts in the plaintiff's favor. *See Gen. Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989).

**B.     Plaintiff Is Entitled To Amend Her Complaint Because Defendants Will Not Be Unduly Prejudiced.**

Defendants will not be prejudiced by Plaintiff's TAC because the liberal concept of the complaint is to make the Defendants aware of the facts. Accordingly, a plaintiff is not bound by the legal theories originally alleged unless a defendant is prejudiced on the merits. The party opposing the amendment bears the burden of showing prejudice. Public policy favors disposition of cases on the merits. *Hernandez v. City of El Monte,* 138 F.3d 393, 399 (9th Cir.1998). Here the factual allegations were known and the allegations were simply clarified

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

and pled with more specificity. Defendants also cannot be prejudiced or caught off guard by the new facts alleged by Plaintiff in the proposed TAC, since Defendants have first-hand knowledge of the roles that they played in Plaintiff's transaction. Even should Defendants assert some prejudice resulting from Plaintiff's proposed amendments, the level of prejudice is less than compelling given the fact that the Defendants would be considerably disadvantaged if FATIC were not a party to this lawsuit since its role is significant in the actions complained of. Further, Defendants will not be prejudiced because Plaintiff's proposed amendments do not impair their ability to proceed to trial nor threaten to interfere with the rightful decision of the case. *Malone v. United States Postal Serv.,* 833 F.2d 128, 131 (9th Cir.1987). Thus, this factor weighs in favor of allowing Plaintiff's amendment.

### C.    Plaintiff Is Entitled To Amend Her Complaint Because Those Amendments Would Not be Futile.

Plaintiff's proposed amendments are not futile. As the TAC makes clear, Plaintiff has plausible allegations that are clarified in this TAC and address many of the issues in FATIC's Motion to Dismiss and approval of this motion would serve judicial economy. *See* Exhibit A. Also, courts do not look to the validity of a proposed pleading in deciding whether to grant leave to amend. *SAES Getters S.P.A. v. Aeronex, Inc.* 219 F.Supp.2d 1081, 1086 (SD CA 2002) (citing text). In determining futility, courts apply the same standard governing Rule 12(b)(6) motions to dismiss: i.e., a proposed amendment is futile if it "does not plead enough to make out a plausible claim for relief." *HSBC Realty Credit Corp. (USA) v. O'Neill* (1st Cir. 2014) 745 F3d 564, 578. Granting leave to amend and effectively mooting out much of the Rule 12(b)(6) motion is appropriate if the complaint's "deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original

PLAINTIFF'S MOTION FOR LEAVE TO FILE 3rd
AMENDED COMPLAINT
Page 6 of 8

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

complaint." *United States v. Corinthian Colleges,* 655 F3d 984, 995, (9th Cir. 2011).

In this case, leave to amend is warranted because any deficiencies can be cured with Plaintiff's additional allegations that are consistent with and that do not contradict the allegations in the previous Amended Complaints.

**D.    Plaintiff Is Entitled To Amend Her Complaint Because There Is No Evidence of Repeated Failure to Cure Deficiencies.**

Plaintiff's First Amended Complaint was filed merely to correct a defective case caption and to add an allegation that the Complaint was meant to also be an Objection to a filed Proof of Claim in Bankruptcy Court. The SAC was the only prior substantive amendment of the Complaint. Moreover, the amendments were filed first and only the SAC was served on the Defendants. Any failure to previously ask the Court for leave to amend was due to interpretation of FRBP 7015 by Plaintiff's counsel which incorporates FRCP 15. If the Court finds that was a misreading of that rule, this Motion for Leave to Amend should cure any defect and avoid any procedural irregularities. Thus, there is no basis to conclude that Plaintiff has repeatedly failed to cure deficiencies by previous amendments. Accordingly, in the interest of justice, this Court should grant Plaintiff's Motion for Leave to File the proposed TAC. The grant of this motion is particularly appropriate here, given the clear absence of any substantial reason to deny leave to amend.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant her leave to file the attached Third Amended Complaint.

//

//

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

DATED: June 2, 2022

Respectfully submitted by:

LAW OFFICE OF MARK CLURE, PS


By: _/s/ Mark C. McClure_____
        Mark C. McClure, WSBA #24393
        Attorney for Plaintiff

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

By: /s/Melissa A. Huelsman_____
        Melissa A. Huelsman, WSBA #30935
        Attorney for Plaintiff


HENRY & DEGRAAFF, PS

By: /s/Christina L. Henry_____
        Christina L. Henry, WSBA #31273
        Attorney for Plaintiff

_____

[i] Request for Judicial Notice filed by Plaintiff herewith.

**Law Office of Mark McClure, P.S.**
1103 West Meeker Street, Suite 101
Kent, WA 98032
(253) 631-64845

# EXHIBIT A

THE HONORABLE LAUREN KING

1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| 8 | BEVERLY JANE CARY, | Dist Ct. Case 2:22-cv-00538-LK |

BEVERLY JANE CARY,

Debtor.

BEVERLY JANE CARY,

Plaintiff,

v.

PATCH SERVICES, LLC d/b/a
NOAH; PATCH HOMES, INC.;
FIRST AMERICAN TITLE
INSURANCE COMPANY
LENDERS ADVANTAGE,

Defendants.

Dist Ct. Case 2:22-cv-00538-LK

Chapter 13 Case No. **20-12450 TWD**

**Adversary Case No.**

[PROPOSED]
THIRD AMENDED COMPLAINT:

(1) TO DETERMINE NATURE AND EXTENT OF
LIEN, IF ANY AND TO QUIET TITLE;
(2) VIOLATION OF RCW 31.04, *et. seq*., WA
CONSUMER LOAN ACT, WHICH
CONSTITUTES A *PER SE* VIOLATION OF THE
WA CONSUMER PROTECTION ACT, RCW
19.86, *et seq.*;
(3) WA USURY STATUTE, RCW 19.52, *et seq.*,
WHICH CONSTITUTES A *PER SE* VIOLATION
OF THE WA CONSUMER PROTECTION ACT,
RCW 19.86, *et seq.*
(4) WA CONSUMER PROTECTION ACT, RCW
19.86, *et seq.*;
(5) INTENTIONAL AND NEGLIGENT
MISREPRESENTATION;
(6) CONSUMER PROTECTION ACT, RCW 19.86,
*et seq.*, VIOLATION BASED UPON VIOLATIONS
OF THE WA ESCROW AGENT REGISTRATION
ACT, RCW 18.44, *et seq.* AND OTHER ACTIONS;
(7) VIOLATIONS OF THE TRUTH IN LENDING
ACT, 15 U.S.C. § 1601, *et seq.*;
(8)  VIOLATIONS OF THE TRUTH IN LENDING
ACTION, 15 U.S.C. § 1639c(e)(3);

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 1

(9) WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.* RE: UNLAWFUL ARBITRATION CLAUSE;
(10) OBJECTION TO CLAIM 11

COMES NOW Debtor and Plaintiff Beverly Jane Cary to pursue her claims that Defendants' joint and several acts constituted violations of numerous Washington statutes, including the Consumer Loan Act, RCW 31.04, *et seq.* ("CLA"), which constitutes a *per se* violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; stand alone violations of the Consumer Protection Act, RCW 19.86, *et seq.*, including a violation which is related to violations of the Escrow Registration Agent Act, RCW 18.44, *et seq.* and other actions; violations of the Usury statute, RCW 19.52, *et seq.*; Intentional and Negligent Misrepresentation; to Quiet Title as against the PATCH Defendants' unlawful lien; violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, including 15 U.S.C. § 1639c(e)(3) and form the basis for her Objection to Claim and avoidance of the PATCH Defendants' Deed of Trust.

## I. PARTIES, JURISDICTION AND VENUE

1.1      Defendant PATCH HOMES, INC d/b/a NOAH, referred to herein as ("PATCH") was formed under the laws of the state of Delaware. Defendant PATCH was not registered with the Washington Secretary of State as a foreign corporation until **September 5, 2019**. Its nature of business was listed as "Home Equity". It became inactive on January 5, 2021 due to not filing the requisite documentation with the Washington Secretary of State. Defendant PATCH is not licensed with the Washington Department of Financial Institutions ("DFI") as a consumer lender, as required by RCW 31.04.025(1); 31.04.035(1). Defendant

THIRD AMENDED COMPLAINT - 2

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

1    PATCH did register with the Washington Department of Revenue but there are no records

2    indicating it has ever paid taxes for conducting business in the State of Washington.

3         1.2    Defendant PATCH SERVICES, LLC ("Patch Services") is a Delaware limited

4    liability company that was registered with the Washington Secretary of State as a foreign LLC

5    on March 9, 2021. Its nature of business is listed as "Financial Servicers Provider". Defendant

6    Patch Services is not licensed by Washington DFI as a consumer lender or loan servicer.

7

8         Defendants PATCH and Patch Services appear to interchangeably use their names in

9    the subject loan documents referring to themselves or being referred to as either "lender" or

10   "investor".

11        1.3    Defendant FIRST AMERICAN TITLE INSURANCE COMPANY LENDERS

12   ADVANTAGE ("Lenders Advantage") appears to be licensed in Washington state with the

13   Office of the Insurance Commissioner using only the name FIRST AMERICAN TITLE

14   COMPANY. It acted as an escrow agent in connection with the loan closing of the subject

15   transaction. Ms. Cary will be investigating its licensing in Washington state to make certain

16   that it is compliant such that it could act as an escrow agent in Washington. In connection with

17   that closing, Defendant Lenders Advantage required Beverly to sign an Escrow Agreement

18   which includes a mandatory arbitration clause. Mandatory arbitration clauses are expressly

19   prohibited under federal law in connection with residential mortgage loans which are the

20   principal dwelling of the borrower. Other entities in the making of the loan, such as escrow

21   companies, cannot assist lenders in trying to avoid that requirement by including a mandatory

22   arbitration clause in other contractual terms.

23

24        1.4    **Jurisdiction**.  This adversary proceeding is commenced pursuant to BR

25   7001 *et seq* and 11 U.S.C §§ 502 (b)(1) and 506 (d). Although an adversary proceeding brought

26

27

THIRD AMENDED COMPLAINT - 3

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

as an objection to claim with a counterclaim is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (K) and/or (O) with non-core matters.  Since the issues raised in this adversary proceeding include counterclaims that go beyond resolution of the claim itself, this matter is a non-core claim that lies beyond the scope of the creditor's proof of claim. Thus, outside of the bankruptcy context, many of the claims would not otherwise *require* adjudication in an Article III Court.  *See, Stern v. Marshall,* 564 U.S. 462, 496-98 (2011) (finding that a bankruptcy court had no constitutional power to evaluate the debtor's common law tort counterclaims because such claims were beyond the scope of the creditor's proof of claim and were claims of a nature that required an Article III court's adjudication).

1.5    **Jurisdiction**.  The Plaintiff is also requesting a jury trial and does not consent to have the jury matters heard in bankruptcy court and does not waive her rights. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).

1.6    **Venue.** Venue is proper pursuant to 28 U.S.C §§ 1408 and 1409.

## II.  FACTS

2.1    Beverly is a single woman who has lived in King County for most of her life. She has one daughter, Alycia, who is currently 34 years old. Alycia's son Kameron is now 7 years old and been diagnosed as autistic. The two of them have lived with Beverly since 2015.

2.2    She worked for Delta Airlines as flight attendant for 31 years and she retired on December 1, 2001, after receiving a payout offer from Delta following the September 11 crashes. She received a monthly pension payment from Delta until she reached the age of 62 when it was reduced due to her beginning to receive Social Security. She still receives some of her pension income along with her Social Security, but her income is not substantial. Between the ages of 52 and 62, she also worked jobs at Home Depot, Chicos and the like to earn some

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 4

extra money and increase future Social Security earnings.

2.3      In 1998, Beverly had a custom home built for her in Maple Valley, which she sold in 2006 in order to downsize. She made a profit of approximately $210,000.00. She decided to rent for awhile and in 2007, she purchased her current residence, located at 27834 31st Place South, Auburn, WA 98001-1819 ("Property") by putting down $150,000.00. She obtained a traditional mortgage to make the purchase and made the monthly payments while living in it until September 2009, when she moved to Florida to be near her closest friend and take a break from the Pacific Northwest. She could not sell the Property at that time without taking a significant loss due to the collapsed housing market. Instead, she rented it out and used those funds to make the mortgage payments.

2.4      Beverly returned to Washington in 2012 because her daughter was talking about getting married and it was time to come home. She rented a place while continuing to rent out the Property until August 2015. In September 2015, Alycia, Kameron and Alycia's husband Rick moved in. Later in 2015, Beverly refinanced the Property in order to reduce her interest rate from 6.35% to 4.56%. This resulted in a new mortgage with a balance of $110,000.00 and a monthly payment of $879.00.

2.5      By 2018, Beverly had very significant credit card debt and needed to get it under control, so she refinanced the Property again and ended up with a payment of $1,150.00 per month after she was paid off approximately $50,000.00 in other debt.

2.6      The reason Beverly was struggling financially and incurring significant credit card debt is because of unlawful charges incurred in her name by her daughter Alycia. Even after the 2018 refinance, her credit card debt and balance on her car loan was approximately $62,000.00, some of which was attributable to fraudulent charges by Alycia on her credit cards

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

1   and from Alycia stealing her debit card and making unauthorized withdrawals.

2      2.7      Alycia's drug problems began when she fell at work and seriously injured her

3   back. She had unsuccessful back surgeries, including a failed spinal fusion in 2013. As a result,

4   she became addicted to pain killers, which began to destroy her life.  Beverly did not realize the

5   problems Alycia was having with the drugs until she moved into her home in September 2015.

6   Once Alycia and her husband moved in with her, they began borrowing money from her for

7   legitimate purposes, but it also became apparent that Alycia was also using the money for drugs

8   as well. Beverly found herself devastated by her daughter's addiction and her efforts to deal

9   with it, but also the financial damage Alycia's actions continued to cause Beverly.

10     2.8      Compounding Beverly's stress was that Alycia went to rehab once and a detox

11  place three times beginning in 2020 and nothing worked to stop her addiction.  Alycia and Rick

12  separated about a year after they moved in and they were fighting over custody of her grandson

13  Kameron. Beverly helps care for Kameron and he has some serious problems. He was born

14  premature with lung damage and has been diagnosed as autistic. All of this just makes the

15  pressures on her almost unbearable.

16     2.9      Beverly's financial problems became exacerbated as Alycia continued to use her

17  credit and debit cards without permission and in spite of Beverly's efforts to prevent her from

18  having access to them. She also stole checks and gained access to Beverly's VENMO account

19  to steal more money. Alycia kept running up very significant debt in Beverly's name again and

20  again. While Beverly was stressing out in 2019 about how she would ever be able to pay off the

21  debt and knowing that it was unlikely she could obtain a traditional refinance, she was attracted

22  by a mailing she received from PATCH Defendants. The appeal of the advertisement from

23  Defendant PATCH was that the loan could close in two to three weeks and the promise of

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

providing a loan to people who could not get traditional loans. Because Beverly was desperate for a loan that would relieve the financial pressures she was facing, a quick closing without traditional underwriting was very attractive.

2.10    Alycia became aware that Beverly was considering entering into the loan with PATCH Defendants and was pressuring her to get it. She was desperate and believed that no other options that included saving her home existed.  She was also about to turn 70 and believed she wouldn't be able to work her way out of her desperate financial situation. Defendant PATCH offered very slick advertising and enticed Beverly into reaching out.  Bev called the telephone number on the Defendant PATCH mailer but does not specifically remember with whom she spoke. The PATCH Defendants offered her what she interpreted as a loan since they were going to give her money to pay off her unsecured debt and she would have to repay it plus interest at a later date. This was no ordinary loan, however, and Beverly did not receive any disclosures in advance of entering into the loan which she could assess or analyze in order to understand the loan terms.

2.11    While the PATCH Defendants entitle and describe their contract as a "Purchase Option Agreement" and repeatedly disavows that it is a loan, the documents provided by the escrow company, Defendant Lenders Advantage, to Beverly for signing referred to the documents as a "loan" and the proceeds as "Loan Amount" approximately 118 times. In numerous places throughout the documents drafted and presented to Beverly for signature by Defendant PATCH, there are references to amounts financed, fees and charges that Beverly must re-pay or pay outright that are solely for the benefit of the PATCH Defendants and to increase its profit when it obtains repayment of the amounts advanced to Beverly, as well as its profit from the transaction.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

2.12     PATCH Defendants did not suggest that Beverly should look at other options to deal with her credit cards including credit counseling, seeking a further traditional refinance, credit counseling, a reverse mortgage, or to discuss her situation with a bankruptcy attorney. While PATCH is not obligated to have these discussions, it is important in this instance since their product was being represented as not a loan at an effort in inducing her to choose it, instead of the other options. In fact, Beverly does not recall any of the discussions she had with PATCH Defendants wherein anyone told her she had the right to have the loan documents reviewed by an attorney. She has now been made aware that the documents she signed contained that language, but she has no memory of seeing it.

2.13     Most importantly, Beverly did NOT receive the loan disclosures required under federal and state lending laws in advance of the loan signing. Instead, she was provided with alleged summaries of the documentation that no layperson would ever be able to actually understand and certainly no layperson would ever be able to understand the true cost associated with the making of this loan, nor of the risk of loss of homeownership that is very real given the outrageous terms. 12 C.F.R. § 1024.2(b) defines a "federally regulated mortgage loan" as follows:

Federally related mortgage loan means:

(1) Any loan (other than temporary financing, such as a construction loan):
(i) That is secured by a first or subordinate lien on residential real property, including a refinancing of any secured loan on residential real property, upon which there is either:
(A) Located or, following settlement, will be constructed using proceeds of the loan, a structure or structures designed principally for occupancy of from one to four families (including individual units of condominiums and cooperatives and including any related interests, such as a share in the cooperative or right to occupancy of the unit);
. . . .

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

12 C.F.R. § 1024.2(b). Ms. Cary's loan meets that definition.

2.14     Under federal law, creditors may not generally exclude charges from the disclosed finance charge that are payable by the consumer incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 1026.4.  If the creditor fails to include such a charge, it improperly discloses the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 1026.18(d).  If the PATCH Defendants had actually calculated the annual percentage rate (APR) and disclosed it in advance of the making of the loan, as required by the Truth in Lending Act, the rate would have been based upon improperly calculated and undisclosed finance charges and an overstated amount financed in violation of 15 U.S.C. § 1606, Regulation Z § 1026.22. A creditor also unlawfully understates the APR in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 1026.18(e).  Regulation Z defines the term "finance charge" as "the cost of consumer credit." 12 CFR § 1026.4 (2004).

2.15     The PATCH Defendants did not comply at all with any of the TILA provisions regarding advance disclosure of the loan terms in advance of the loan signing. This also violated the Washington Consumer Loan Act which incorporated TILA requirements into its language.

2.16     The PATCH Defendants are covered by TILA loan disclosure requirements because they make more than five (5) loans per year. The PATCH Defendants were required to provide Ms. Cary with the Loan Estimate within three business days of the receipt of the consumer's loan application. 12 C.F.R. § 1026.19(e)(1). That Estimate must contain a good faith estimate of credit costs and transaction terms. If any information necessary for an accurate disclosure is unknown, the creditor must make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer and use due

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

diligence in obtaining the information. 12 C.F.R. § 1026.19(e)(1)(i); Comment 19(e)(1)(i)-1. The Estimate must be in writing and contain the information prescribed in § 1026.37. The creditor must disclose only the specific information set forth in 12 C.F.R. § 1026.37(a) through (n), as shown in the CFPB's form in appendix H-2, consistent with 12 C.F.R. § 1026.37(o).

2.17    Delivery must satisfy the timing and method of delivery requirements. The creditor is responsible for delivering the Loan Estimate or placing it in the mail no later than the third business day after receiving the application. 12 C.F.R. § 1026.19(e)(1)(iii)). The PATCH Defendants were required to use form H-24, promulgated by the CFPB. 12 C.F.R. § 1026.37(o)(3)(i). PATCH Defendants did not make any disclosures within three business days of Ms. Cary's application or at all, nor did they use form H-24.

2.18    Rather than providing Beverly with standard loan terms which complied with federal and state lending laws, the PATCH Defendants demanded that she re-pay the loan with a percentage of her home's equity through a complex labyrinth of loan terms that no average consumer and even most experienced lawyers would be able to follow and understand, let alone calculate the interest rate, repayment requirements, etc. The Agreement also included an initial reduction in the alleged value of the Property and allowed Defendant PATCH to exclusively control the process of determining the value of the Property throughout the history of the transaction.

2.19    Further, the unlawful loan provided by the PATCH Defendants included a requirement, not disclosed in advance and only provided at the loan signing, of a **non-revocable** Power of Attorney ("POA") giving the PATCH Defendants the power to control the entirety of the contractual relationship and stealing from Beverly any control she might have over her home, the Property.  The very broad powers in the POA includes: (1) allowing

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 10

1    Defendant PATCH to force the sale of Beverly's home in the event she files a bankruptcy and

2    if Beverly fails to "maintain", "preserve" or "repair" the Property according to the unilateral

3    discretion of Defendant PATCH.  The definition of "maintain" and "repair" include such

4    generic terms as keeping the Property in "good condition". Again, allowing Defendant PATCH

5    to decide for itself and without giving Beverly any ability to challenge its decisions whether she

6    is or is not keeping the Property in "good condition", which then permits Defendant PATCH to

7    force the sale of her home and repeat its very significant profits that it disavows is interest.

8    Beverly maintains that the amounts over and above what was loaned to her is interest that

9    Defendants seek to mischaracterize in an effort at avoiding federal and state lending laws.

10

11        2.20    Believing there were no other options and facing immense financial pressure,

12   Beverly signed the PATCH Defendants' documents on or about **July 3, 2019**, approximately

13   two months **before** Defendant PATCH had registered to conduct any business in the State of

14   Washington. And as noted above, Defendant PATCH was not then and never has been licensed

15   to engage in consumer lending and to take a lien interest on Beverly's residence in the State of

16   Washington.  That lien is evidenced by a Deed of Trust, which is consistent with Washington's

17   requirements that any encumbrance be evidenced by a deed. RCW 64.04.010. The PATCH

18   Defendants' Deed of Trust is most certainly an "encumbrance". Further, a deed of trust in

19   Washington is treated as a mortgage on real property. RCW 61.24.020. This is irrespective of

20   the PATCH Defendants efforts to characterize the transaction as anything other than a

21   mortgage loan.  *See also,* RCW 61.24.005(2) which defines "beneficiary" in a deed of trust as

22   "the holder of the instrument or document evidencing the obligations secured by the deed of

23   trust". Defendant PATCH has identified itself as the "beneficiary" in the Deed of Trust it

24   required Beverly to sign.

25

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 11

2.21     Beverly failed to understand core terms of the loan, which is understandable when one tries to read the complex and Byzantine terms included in the loan documents, such as Defendant PATCH's claim of a right to force the sale of her home prior to the end of the 10 year term of the loan; exactly how the repayment amount will be calculated; how much Beverly would owe six (6) months after the documents were signed; how much would be owed after twelve (12) months; how much would be owed after three (3) years, and so on.  In return for the approximately $62,000 that Defendant PATCH paid out on the loan to Beverly and on her behalf for her debts, Beverly had no idea that it would demand in excess of $126,000.00 less than three years later, as it has done in her bankruptcy case.

2.22     Among the other absurd terms of the unlawful loan made by the PATCH Defendants are the following, including terms of the Real Estate Option Agreement, Sections 5.3, 6.1, 6.2, 7 and 19, including subsections and in particular, Section 20, which requires Beverly to indemnify Defendant PATCH f or any potential claims while there is no obligation from Defendant PATCH to Beverly:

    a.     It allows the "Investor", Defendant PATCH, to order an appraisal without Beverly's consent and to charge her for it;
    b.     If Beverly disagrees with the appraised amount, she has to pay for another one herself and if she and Defendant PATCH cannot reach an agreement, she is required to arbitrate the issue. As noted above, mandatory arbitration in connection with the making of a residential mortgage loan which is Beverly's principal dwelling is illegal under federal law;
    c.     The Owner, Beverly, will have a different required "payout" amount depending upon what sort of transaction she enters into in the future to either refinance the Property, sell it to a third party, sell it to Defendant PATCH, etc. These are the sort of uncertain and differing repayment terms which violate federal and state lending laws;
    d.     Specific assertions of what Beverly has to repay Defendant PATCH while simultaneously contending that the transaction is not a loan and that interest is not being charged.

2.23     In spite of the PATCH Defendants' repeated assertions throughout the loan

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

documents that the transaction is not a loan, the accompanying Deed of Trust confirms that that

is precisely the nature of the transaction in multiple places . Paragraph 7 begins with the

following language:

> Default and Foreclosure and Power of Sale.
>
> Upon default by Trustor in the performance of or upon breach by Trustor of any of the rights and obligations that are secured by this Security Instrument as specified above, **Beneficiary may declare all sums secured by this Security Instrument immediately due and payable and may invoke the power of sale and any other remedies permitted by applicable law, including an action in any court of competent jurisdiction to foreclose this Security Instrument as a deed of trust or mortgage.**

Deed of Trust, Paragraph 7 (emphasis added). The Trustor is Ms. Cary and the Beneficiary is

Defendant PATCH.

2.24     The Deed of Trust at Paragraph 10 also gives the Trustee powers that only the

Beneficiary may demand it exercise, in contravention of its duties under Washington law to

both the "borrower" (in this instance, the borrower is identified as the "Trustor") and the

"beneficiary". RCW 61.24.010(4).

2.25     At Paragraph 12, the exclusive duty to pay for the services of the Trustee, which

only Defendant PATCH controls and directs, is to be borne by Trustor, Ms. Cary. This too is a

blatant violation of Washington law and further evidences just how much the entirety of the

subject loan transaction is one-sided and designed to guarantee that Ms. Cary ends up losing

her home and all of the equity in it to Defendant PATCH.

2.26     The Deed of Trust also purports to be a separate lien on personal property that is

part of the Property, including fixtures, under UCC Article 9. This assertion is absurd and

contradictory to the provisions of Washington law that makes clear that a deed of trust secures

real property and only real property. Further, "fixtures" are not separate from structures on and

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

1    part of real property.

2        2.27    Ms. Cary is not listing all of the onerous and unlawful terms of the loan

3    agreement herein, but she does assert that every part of the loan documentation violates federal

4    and state lending laws, as well as Washington real property law. She also did not realize she

5    had agreed to a mandatory arbitration clause until the loan documents were reviewed with her

6    attorneys. Had she not taken action to reject the loan terms and rescind the loan entirely under

7    TILA with the assistance of her attorneys, she would have been bound by all of the loan terms,

8    including the unlawful mandatory arbitration clause.

9

10       2.28    The PATCH Defendants may have further violated TILA and state law when it

11   made the unilateral decision to have Ms. Cary's escrow handled by an escrow agent, Defendant

12   Lenders Advantage, which may not licensed in Washington state in a manner that allowed it to

13   act as an escrow agent in Washington state. The escrow paperwork indicated that Defendant

14   Lenders Advantage was operating under a California license – not a Washington license. If

15   Defendant Lender's Advantage is actually just a part of First American Title Insurance and is

16   licensed by the Washington Department of Insurance, then it can act as an escrow agent in

17   Washington as long as it complies with the Escrow Agent Registration Act, RCW 18.44, *et seq.*

18

19       2.29    Defendant Lenders Advantage also included a mandatory arbitration agreement

20   in its escrow paperwork which is prohibited by TILA. That agreement purports to require

21   arbitration of any and all disputes relating to the loan terms. By doing so, Defendant Lenders

22   Advantage was acting in collusion with the PATCH Defendants to further violate TILA which

23   prohibits the use of a mandatory arbitration agreement in connection with a federally regulated

24   mortgage loan. 15 U.S.C. § 1639c(e)(3). The PATCH Defendants cannot use a third party to

25   impose terms upon a borrower that are prohibited by federal law.

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

2.30     As evidenced by the fact that Beverly had to file a Chapter 13 bankruptcy, obtaining a loan from Defendant PATCH did not solve Beverly's financial problems. She found herself back in financial trouble again due to Alycia's continued addiction problems. She was required to file this bankruptcy to get some relief, but that was how she discovered the horrific nature of the loan she obtained from Defendant PATCH when she had to try to figure out how much she owed on the loan after a short period of time.

2.31     Upon request by Beverly's bankruptcy counsel, Defendant PATCH provided a "Final Payoff Statement" in the amount of $126,554.00 dated March 5, 2021. Defendant PATCH later filed a Proof of Claim in the amount of $122,500.00 on July 5, 2021.  Apparently, Defendant PATCH cannot even calculate its own payoff calculations using the formula it created. But these amounts make it very clear that the transaction is a loan and a very expensive one at that. Defendant PATCH lent Ms. Cary $64,000.00 on or about July 13, 2019 and less than two years later, it was demanding almost double that amount in repayment. That constitutes an interest rate of almost 50% per annum.

2.32     Defendant PATCH has even gone so far as to try to repeatedly oppose Beverly's attempts to get lawyers hired to represent her in challenging the validity of this loan agreement, telling this Court that Beverly doesn't have a right to challenge its unlicensed loan product and making threats about incurring legal fees in connection with its efforts to prevent her from obtaining recovery that Defendant PATCH maintains it can charge her under the loan contract. In other words, Defendant PATCH is using its high-priced Silicon Valley lawyers to waste this Court's time by making frivolous arguments and legally unsupported opposition to Ms. Cary's right to challenge the terms of this unlawful loan while preparing to charge her for those efforts. This is yet another example of the horrific and onerous nature of the contractual terms

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

of the unlawful loan provided to Beverly by Defendant PATCH, and the predatory nature of Defendant PATCH and all of its affiliated entities, as well as the members of the Defendants' LLCs.

2.33    Defendant Lenders Advantage has acted in collusion with the other Defendants to facilitate this unlawful loan by providing escrow services in Washington state when it may not be licensed to do so, and by insisting that Ms. Cary sign an escrow agreement that includes a mandatory arbitration agreement, in direct contravention of the federal lending laws.

2.34    Beverly has incurred damages and been injured in amounts to be determined later by the trier of fact but which include at this stage illegal and unlawful demands for interest and fees which Defendant PATCH is demanding in violation of Washington law. As outlined below, a loan made by an unlicensed lender which is secured by a residence does not allow the lender to recovery **any fees or interest** on the loan. RCW 31.04.035(2). She has also incurred attorneys' fees and costs relating to having to obtain information from the PATCH Defendants about the alleged loan balance, and to respond to the Proof of Claim and other efforts in her Chapter 13 bankruptcy attributable to the actions of the PATCH Defendants. Further, Ms. Cary is required to take this action to make certain that the unlawful arbitration clause is not included in the loan agreement with the PATCH Defendants and to make certain that the PATCH Defendants cannot enforce the unlawful terms which it has tried to impose upon Ms. Cary, in contravention of federal and state lending laws.

### III.  <u>CAUSES OF ACTION</u>

<u>First Cause of Action</u>
<u>Quiet Title and To Determine</u>
<u>The Nature and Extent of Any Lien</u>
<u>as Against Defendants PATCH and Patch Homes</u>

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 16

3.1     Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in the paragraphs above, inclusive, of the Factual Allegations above.

3.2     Under Washington law, RCW 7.28.010, Ms. Cary has the right to bring this action in order to remove the cloud on title in the form of an unlawful mortgage loan secured by a Deed of Trust that has been generated, created and recorded against the subject real Property by Defendants PATCH and Patch Homes, in an attempt to gain for in a monetary recovery against the Property to which it is not entitled, as it is above and beyond any right it may have for making an unlawful loan.

Second Cause of Action
Violation of the Consumer Loan Act, which is a
*Per Se* Violation of the Consumer Protection Act
as Against Defendants PATCH and Patch Homes

3.3     Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, inclusive, and the Facts Statements, inclusive, and Paragraphs 3.1 through 3.2 of the Causes of Action above.

3.4     The Consumer Loan Act, RCW 31.04.035, **requires** any person or entity to be licensed under the CLA if they obtain a lien on a borrower's residence. Defendants PATCH and Patch Homes do not have a license to make a consumer loan and the loan transaction at issue is a consumer loan secured by Ms. Cary's residence. A violation of RCW 31.04.035 is a *per se* violation of the Consumer Protection Act and as such, Defendants PATCH and Patch Homes are liable to Ms. Cary for their violations of the law, as more particularly described above in Facts Section.

3.5     A *per se* violation of the CPA under the CLA, RCW 31.04.208, meets the

THIRD AMENDED COMPLAINT - 17

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

requirements of (1) unfair or deceptive act, (2) in trade or commerce, and (3) affecting the public interest. *Id.* As identified above, Ms. Cary has suffered injuries and incurred damages as a direct result of the actions of Defendants PATCH and Patch Homes in connection with their violations of the CLA. Therefore, she is entitled to recover damages, treble damages and reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief to make certain that other Washington consumers are not similarly harmed by the actions of Defendants PATCH and Patch Homes. In addition, Defendants PATCH and Patch Homes may not collect **any** interest on the loan nor any fees, and if any of these amounts have already been paid by Ms. Cary, either through the loan terms or other means, Defendants PATCH and Patch Homes must refund those amounts to her under Washington law.

Third Cause of Action
Violation of the Washington State Usury Statute
Which is a *Per Se* Violation of the CPA
as Against Defendants PATCH and Patch Homes

3.6    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.5 of the Causes of Action above.

3.7    Under RCW 19.52.020(1),

(1) Except as provided in subsection (4) of this section, any rate of interest shall be legal so long as the rate of interest does not exceed the higher of: (a) Twelve percent per annum; or (b) four percentage points above the equivalent coupon issue yield (as published by the Board of Governors of the Federal Reserve System) of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the later of (i) the establishment of the interest rate by written agreement of the parties to the contract, or (ii) any adjustment in the interest rate in the case of a written agreement permitting an adjustment in the interest rate. No person shall directly or indirectly take or receive in money, goods, or things in

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

action, or in any other way, any greater interest for the loan or forbearance of any money, goods, or things in action.

RCW 19.52.020(1).

3.8     Given the current interest rate published by the Board of Governors of the Federal Reserve System is extremely low, the effective cap on interest rates in Washington state is twelve percent (12%) per annum. The loan made to Beverly by Defendants PATCH and Patch Homes carries an interest rate demonstrably in excess of 12 percent per annum based upon the amounts demanded by the PATCH Defendants in her Chapter 13 bankruptcy.

3.9     RCW 19.52.030 also provides that:

(1) If a greater rate of interest than is allowed by statute shall be contracted for or received or reserved, the contract shall be usurious, but shall not, therefore, be void. If in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the creditor shall only be entitled to the principal, less the amount of interest accruing thereon at the rate contracted for; and if interest shall have been paid, the creditor shall only be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the debtor shall be entitled to costs and reasonable attorneys' fees plus the amount by which the amount the debtor has paid under the contract exceeds the amount to which the creditor is entitled . . .

RCW 19.52.030(1).

3.10    Consistent with the Usury statute, Ms. Cary is entitled to recover **twice** the interest that she has already paid on the loan, which in this case may be that amount which the PATCH Defendants are demanding in the bankruptcy has already "accrued" and should be deducted from the equity in her home. The PATCH Defendants is only entitled to recover the principal amount provided to Ms. Cary, less any interest which has been accrued and to recover her reasonable attorneys' fees and costs incurred to date. This will also include the costs she was charged in connection with the making of the loan, including the escrow and other fees.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

3.11     The Usury statute also allows for a *per se* CPA violation in the event of a violation of the statute. RCW 19.52.036. A violation of the statute meets the unfair or deceptive and trade or commerce elements of the CPA.

3.12     Ms. Cary can prove the "public interest" element of a CPA claim which requires proof that the PATCH Defendants "had the capacity to injure other persons" and "has the capacity to injure other persons" because it continues in its business as of the writing of this Amended Complaint. This is also evidenced by the actions of the PATCH Defendants in Ms. Cary's bankruptcy wherein they tried to collect a usurious interest amount by filing a Proof of Claim for the same and because of its actions to try to prevent Ms. Cary from being able to hire lawyers to represent her.

3.13     Ms. Cary, acting through her attorneys, is also aware that the PATCH Defendants continue to do business by advertising online through the Noah website offering the same products that she was conned into signing.

3.14     Ms. Cary has suffered injuries and incurred damages as a direct result of the actions of Defendants PATCH and Patch Homes in connection with their violations of the Washington usury statute. Therefore, she is entitled to recover damages, treble damages and reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief to make certain that other Washington consumers are not similarly harmed by their actions. In addition, the PATCH Defendants may not collect **any** interest on the loan nor any fees, and if any of these amounts have already been paid by Ms. Cary, either through the loan terms or other means, the PATCH Defendants must refund double those amounts to her under Washington law.

<u>Fourth Cause of Action</u>

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

1

2

<u>Violation of the Consumer Protection Act</u>
<u>as Against Defendants PATCH and Patch Homes</u>

3.15    Ms. Cary incorporates herein by reference as though fully set forth at length

each and every allegation and statement contained in all of the Sections above, including the

Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.14 of

the Causes of Action above.

3.16    The PATCH Defendants have made numerous misrepresentations about the

terms of the contract and whether or not it is a loan, whether the terms of the loan are compliant

with Washington state law (they are not) and whether the loan can even be made under

Washington law, as well as the amounts owing under the loan and whether PATCH Defendants

can charge her interest and any fees on the loan, as more particularly described above.  These

misrepresentations were unfair and deceptive, and they occurred in trade or commerce, which

is PATCH Defendants' business model and purpose.

3.17    Ms. Cary maintains, based upon information and belief, that the Defendants

have engaged in making similar misrepresentations to other Washington homeowners and/or

that it had the capacity to do so previously and/or has the capacity to do so in the future.

3.18    All of Ms. Cary's injuries and damages were caused by the PATCH Defendants

and they are directly responsible for those injuries and damages.

<u>Fifth Cause of Action</u>
<u>Intentional and Negligent Misrepresentation</u>
<u>as Against PATCH Defendants</u>

3.19    Ms. Cary incorporates herein by reference as though fully set forth at length

each and every allegation and statement contained in all of the Sections above, including the

Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.18 of

THIRD AMENDED COMPLAINT - 21

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

the Causes of Action above.

3.20     Ms. Cary maintains that there were numerous intentional and/or negligent misrepresentations made to her by the PATCH Defendants about the terms of the loan, by and through their agents, as described more particularly hereinabove.

3.21     Ms. Cary was particularly harmed by the specific misrepresentations made by the representatives of PATCH Defendants about the terms of the loan, and intentional omissions about the loan terms prior to signing since they did not provide her with any information about the loan terms in advance, as described more particularly in the Facts section above.  Included in the misrepresentations were assertions regarding the fact that it is a loan, in spite of PATCH Defendants' assertions to the contrary, the correct amount owing at any given time after the loan is made, the amounts that may be demanded in connection with the loan under Washington law, and the rights to completely control all of the terms of the contract and whether or not Beverly is complying with the loan terms.

3.22     As a result of the actions of the PATCH Defendants, which is also referenced in the loan documents, Beverly has been harassed for monies that she does not owe and now faces the risk of losing her home and all of her equity therein.

Sixth Cause of Action
Violations of the Escrow Registration Agent Act, RCW 18.44, *et seq.*
Which Constitutes A Violation of the CPA as Against
Defendant First American Title Insurance Company Lenders Advantage

3.23     Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.22 of the Causes of Action above.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 22

1          3.24      RCW 18.44.011(8) defines who may act as an escrow agent under Washington

2   law:

3          "Escrow agent" means any person engaged in the business of performing for
            compensation the duties of the third person referred to in subsection (7) of this
4           section.

5   RCW 18.44.011(8).

6          3.25      RCW 18.44.011(7) describes the business practices which constitute an

7   "escrow" which is undertaken by an "escrow agent":

8          "Escrow" means **any transaction**, except the acts of a qualified intermediary in
            facilitating an exchange under section 1031 of the internal revenue code, **wherein**
9          **any person or persons, for the purpose of effecting and closing the sale,**
            **purchase, exchange, transfer, encumbrance, or lease of real or personal**
10         **property to another person or persons, delivers any written instrument,**
            **money, evidence of title to real or personal property, or other thing of value**
11         **to a third person to be held by such third person until the happening of a**
            **specified event or the performance of a prescribed condition or conditions,**
12         **when it is then to be delivered by such third person, in compliance with**
            **instructions under which he or she is to act, to a grantee, grantor, promisee,**
13         **promisor, obligee, obligor, lessee, lessor, bailee, bailor, or any agent or**
            **employee thereof.** "Escrow" includes the collection and processing of payments
14         and the performance of related services by a third party on seller-financed loans
            secured by a lien on real or personal property but excludes vessel transfers.
15

16  RCW 18.44.011(7). Emphasis added.

17         3.26      Defendant Lenders Advantage is an "escrow agent" as defined by RCW

18  18.44.011(8) and it performed the acts described in RCW 18.44.011(7) in connection with

19  providing escrow services to Ms. Cary and the PATCH Defendants relating to the loan that is

20  the subject of this litigation.

21         3.27      The Escrow Agent Registration Act, RCW 18.44.301 includes the following

22  "Prohibited Practices":

23         It is a violation of this chapter for any **escrow agent**, controlling person,
            officer, designated escrow officer, independent contractor, employee of an escrow
24         business, or other person subject to this chapter to:

25

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 23

(1) Directly or indirectly employ any scheme, device, or artifice to defraud or **mislead borrowers or lenders** or to defraud any person;

(2) **Directly or indirectly engage in any unfair or deceptive practice toward any person**;

. . . .

(4) **Knowingly make, publish, or disseminate any false, deceptive, or misleading information in the conduct of the business of escrow, or relative to the business of escrow or relative to any person engaged therein**;

. . . .

(11) **Fail to comply with any requirement of any applicable federal or state act including the truth in lending act, 15 U.S.C. Sec. 1601 et seq. and Regulation Z, 12 C.F.R. Sec. 226**; the real estate settlement procedures act, 12 U.S.C. Sec. 2601 et seq. and Regulation X, 24 C.F.R. Sec. 3500; the equal credit opportunity act, 15 U.S.C. Sec. 1691 et seq. and Regulation B, Sec. 202.9, 202.11, and 202.12; Title V, Subtitle A of the financial modernization act of 1999 (known as the Gramm-Leach-Bliley act), 12 U.S.C. Secs. 6801-6809; the federal trade commission's privacy rules, 16 C.F.R. Secs. 313-314, mandated by the Gramm-Leach-Bliley act; as these acts existed on January 1, 2007, or such subsequent date as may be provided by the department by rule, or any other applicable escrow activities covered by the acts;

. . . .

RCW 18.44.301(1), (2), (4), (11). Emphasis added.

3.28     Ms. Cary maintains that Defendant Lenders Advantage in actions more particularly described above which constituted violations of the Prohibited Practices, RCW 18.44.301(1), (2), (4) and (11) by engaging in a "scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person" (1); by "directly or indirectly engage in any unfair or deceptive practice toward any person" (2);  knowingly make, publish, or disseminate any false, deceptive, or misleading information in the conduct of the business of escrow, or relative to the business of escrow or relative to any person engaged therein (4); and fail to comply with any requirement of any applicable federal or state act including the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. and Regulation Z, 12 C.F.R. § 226 (11) when it consummated an obviously unlawful loan that included paperwork which expressly disavowed being a loan and which obviously violated TILA in numerous ways, including the fact that

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

none of the documents required by TILA were included in the loan documents.

3.29     Defendant Lenders Advantage violated the Washington Consumer Protection Act"("CPA"), RCW 19.86, *et seq.*, in connection with its actions during its handling of the escrow for Defendant PATCH and Ms. Cary. Those actions are identified as follows:

a.     It engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Those "unfair" and "deceptive" acts included the inclusion of the Arbitration Agreement in the Escrow General Instructions, which required that Ms. Cary pursue "**all disputes and claims arising out of or relating to this Escrow must be resolved by arbitration.**"

> 19. **AGREEMENT TO ARBITRATE.**
> (a)  Except as indicated in the paragraph regarding CONFLICTING INSTRUCTIONS & RELATED DISPUTES, above, **all disputes and claims arising out of or relating to this Escrow must be resolved by arbitration**. Notwithstanding the foregoing, any party may bring an individual action in small claims court. Any dispute as to the arbitrability of claims or the scope or enforceability of this arbitration provision, or as to the interpretation of paragraph (c) below, is for the court to decide. This Escrow evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of the Escrow.

Escrow General Instructions, Paragraph 19. (Emphasis added.) Given the broad language of the **AGREEMENT TO ARBITRATE** that Defendant Lender's Advantage required Ms. Cary to sign, it applies to any of her challenges to the entirety of the transaction with the PATCH Defendants, as well as the escrow agent.

b.     The Truth in Lending Act (TILA) prohibits the use of an arbitration clause in connection with mortgage lending secured by the borrower's primary dwelling. 15 U.S.C. § 1639c(e)(3). Thus, Defendant Lender's Advantage was actively engaged with the PATCH Defendants in assisting them in violating those provisions of TILA and imposing an arbitration

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 25

clause upon Ms. Cary that is prohibited by federal law in this sort of lending transaction. These actions constituted an unfair and deceptive act.

c.      Defendant Lender's Advantage also participated in an escrow for a transaction that purported **not** to be a loan, but which it treated as a loan for purposes of the escrow, including the execution of a Deed of Trust which is defined in Black's Law Dictionary as:

> An instrument in use in many states, taking the place and serving the uses of a common-law mortgage, by which the legal title to real property is placed in one or more trustees, **to secure the repayment of a sum of money or the performance of other conditions.**

Black's Law Dictionary. (Emphasis added.) This also constituted an "unfair" and "deceptive" act, as well as publication and/or dissemination of "false" and "misleading" information to Ms. Cary.

d.      Defendant Lender's Advantage engaged in that action in connection with its business of providing escrow services, which constitutes "trade or commerce". Paragraph 19(a), "This Escrow evidences a transaction in interstate commerce . . ."

d.      Defendant Lender's Advantage's actions **had** and **has** "the capacity to injure other persons." RCW 19.86.093(c). This is demonstrated by way of the fact that the document signed by Ms. Cary is titled "Escrow General Instructions". It is Defendant Lender's Advantage's "General Instructions" utilized by at least a significant portion of their escrow customers. Discovery in this case will confirm how often it has been used on others to impose upon them an arbitration clause that violates TILA.

e.      The actions of Defendant Lender's Advantage caused Ms. Cary damages in the form of participating in and helping facilitate the inducement to get her to enter into a loan transaction that was nothing like what it purported to be and without any of the required loan

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

disclosures mandated under federal and state law. If the PATCH loan is held to be enforceable, it would result in Ms. Cary likely losing most, if not all, of the equity in her home, and would allow a third party to have complete control of all decisions to be made regarding her home for the entirety of the loan contract.

f.     Defendant Lender's Advantage has also caused Ms. Cary injury in the form of having to pay her bankruptcy lawyer to deal with PATCH's demands for payment of approximately double the amount it loaned to Ms. Cary after only two years through the filing of a Proof of Claim. She was also injured by the PATCH Defendants making that demand, even though she has not yet been required to pay any of it.

g.     Defendant Lender's Advantage helped cause the damages and injuries suffered by Ms. Cary through its intentional actions which were always designed to assist only the PATCH Defendants and were done either with the intent to harm Ms. Cary or with a callous and intentional disregard of the harm that would come to an unsophisticated borrower entering into an exceedingly complex loan transaction that purported to not even be a loan.

3.30     For all of the above reasons and based upon its actions, Ms. Cary maintains that Defendant Lender's Advantage is liable to her for violations of the Consumer Protection Act, RCW 19.86, *et seq.*

<u>Seventh Cause of Action</u>
<u>Violations of the Truth in Lending Act, 15 U.S.C. § 1206, *et seq.*</u>
<u>Against PATCH Defendants</u>

3.31     Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.30 of the Causes of Action above.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

3.32    The PATCH Defendants are required by TILA to make numerous loan

disclosure because they make more than five (5) loans per year and because the loan met the

definition of a "federally related mortgage loan", which included:

(1) Any loan (other than temporary financing, such as a construction loan):
        (i) That is secured by a first or subordinate lien on residential real
property, including a refinancing of any secured loan on residential real property,
upon which there is either:
            (A) Located or, following settlement, will be constructed using
proceeds of the loan, a structure or structures designed principally for occupancy
of from one to four families (including individual units of condominiums and
cooperatives and including any related interests, such as a share in the cooperative
or right to occupancy of the unit);
. . . .

3.33    For that reason, the PATCH Defendants were required to provide Ms. Cary with

a Loan Estimate within three business days of the receipt of the consumer's loan application.

12 C.F.R. § 1026.19(e)(1). It was required to contain a good faith estimate of credit costs and

transaction terms, based upon the best information reasonably available at the time the

disclosure is provided to the consumer and use due diligence in obtaining the information. 12

C.F.R. § 1026.19(e)(1)(i); Comment 19(e)(1)(i)-1). The Estimate was required to be in writing

and contain the information prescribed in 12 C.F.R. § 1026.37. The creditor must disclose only

the specific information set forth in 12 C.F.R. § 1026.37(a) through (n), as shown in the

CFPB's form in appendix H-2, consistent with 12 C.F.R. § 1026.37(o).

3.34    The creditor is responsible under TILA for delivering the Loan Estimate or

placing it in the mail no later than the third business day after receiving the application. 12

C.F.R. § 1026.19(e)(1)(iii)). The PATCH Defendants were required to use form H-24,

promulgated by the CFPB. 12 C.F.R. § 1026.37(o)(3)(i). PATCH Defendants did not make any

disclosures within three business days of Ms. Cary's application or at all, nor did they use form

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 28

H-24.

3.35    Rather than providing Beverly with standard loan terms which complied with federal and state lending laws, The PATCH Defendants demanded that she re-pay the loan with a percentage of her home's equity through a complex labyrinth of loan terms that no average consumer and even most experienced lawyers would be able to follow and understand, let alone calculate the interest rate, repayment requirements, etc. The Agreement also included an initial reduction in the alleged value of the Property and allowed Defendant PATCH to exclusively control the process of determining the value of the Property throughout the history of the transaction.

3.36    Based upon these violations of TILA, Ms. Cary is entitled to rescind the loan and she seeks that recovery from the Court. 12 C.F.R. § 1026.23(a)(3). Simultaneous with the filing of this Third Amended Complaint, Ms. Cary will also send a Rescission Letter as contemplated by the statute.

Eighth Cause of Action
Violations of the Truth in Lending Act, 15 U.S.C. § 1639c(e)(3)
Against PATCH Defendants

3.37    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.36 of the Causes of Action above.

3.38    TILA, at 15 U.S.C. § 1639c(e)(3), prohibits the imposition of an arbitration clause on any mortgage loan which is secured by the borrower's primary dwelling:

(e) Arbitration

    (1) In general

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

> No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.
>
> . . . .

(3) No waiver of statutory cause of action

> No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in paragraph (1), shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

15 U.S.C. § 1639c(e)(3).

3.39    The PATCH Defendants acted in collusion with Defendant Lenders Advantage and chose to use that entity as the escrow agent in this transaction and allowed it to include a mandatory arbitration clause in the closing documents which sought to impose such terms on the entirety of the loan transaction, in direct contravention of federal law.

3.40    The PATCH Defendants are charged with knowing the federal and state lending laws which applied to this transaction and their intentional actions in violating all of those lending laws is evidenced in the entirety of the transaction, including the repeated assertions in the loan documents themselves that the transaction was not a loan.

3.41    The PATCH Defendants therefore violated federal law by including a mandatory arbitration agreement in the subject loan terms.

//

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 30

1

2

3

4

### Ninth Cause of Action
### Violations of the CPA Based Upon Unlawful Imposition
### Of a Mandatory Arbitration Clause on Plaintiff
### In Violation of Federal Law As Against
### Defendant First American Title Insurance Company Lenders Advantage
### And The Patch Defendants

5

6

3.42    Ms. Cary incorporates herein by reference as though fully set forth at length

7

each and every allegation and statement contained in all of the Sections above, including the

8

Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.41 of

9

the Causes of Action above.

10

3.43    As noted above, Defendant Lenders Advantage, acting in collusion with the

11

PATCH Defendants, included an arbitration clause in the escrow documents which is designed

12

to bind Ms. Cary to mandatory arbitration in connection with the making of the subject loan, in

13

direct violation of the requirements of federal law. The Truth in Lending Act, 15 U.S.C. §

14

1639c(e) prohibits the use of a binding arbitration clause in connection with the making of a

15

residential mortgage loan when it is the borrower's principal dwelling.

16

3.44    Defendant Lenders Advantage is licensed as an escrow agent in the State of

17

California, as noted on its escrow documents and it may well be licensed to act as an escrow

18

agent in Washington if it is really the First American Title Company which is licensed in

19

Washington by the Office of Insurance Commissioner. As such, it was required to adhere to

20

TILA and other federal lending laws under Washington law in connection with its work as an

21

"escrow agent" in Washington state. RCW 18.44.301(11). It is therefore charged with knowing

22

the corresponding federal and state lending laws which regulate the making of federally

23

regulated mortgage loans as well as knowledge of Washington escrow laws. It either has

24

intentionally ignored TILA and federal lending laws or it has chosen not to know them and to

25

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

act in collusion with lenders such as the PATCH Defendants to violate those laws. Either way, it acted in violation of the requirements of TILA and the Washington Escrow Agent Registration Act.

3.45    The PATCH Defendants also are charged with knowing federal and state lending laws, which include TILA and the express prohibition on the imposition of a mandatory arbitration clause. It chose to intentionally ignore this prohibition, craft loan documents that disavow being a loan and colluding with Defendant Lenders Advantage to impose upon Ms. Cary an unlawful mandatory arbitration clause.

3.46    The PATCH Defendants have made numerous misrepresentations about the terms of the contract and whether or not it is a loan, as described more completely above. In addition, it further engaged in unfair and deceptive actions by choosing an escrow agent which imposed upon Ms. Cary in the escrow documents a mandatory arbitration agreement which was prohibited by federal law.

3.47    The PATCH Defendants and Defendant Lenders Advantage engaged in these unfair and deceptive actions in connection with trade or commerce, the operation of their respective businesses, and they had previously when they took these actions the capacity to impose an unlawful arbitration agreement upon borrowers in the future and they continue to have the capacity to impose an unlawful arbitration agreement upon other borrowers at this time. RCW 19.86.020; 19.86.093(c).

3.48    Ms. Cary was injured by way of the imposition of this unlawful arbitration agreement because she had to retain and consult with attorneys to make certain that she did not become required to participate in this unlawful arbitration agreement and to arbitrate her claims against the Defendants.

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

3.49    All of Ms. Cary's injuries and damages were caused by the PATCH Defendants and Defendant Lenders Advantage and they are directly responsible for those injuries and damages.

<u>Tenth Cause of Action</u>
<u>Objection to Claim</u>
<u>Against PATCH Defendants</u>

3.50    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.49 of the Causes of Action above.

3.51    Incorporating the prior factual allegations and nine causes of action pled in this Complaint, Defendant PATCH's Proof of Claim as identified in claim number 11, **Exhibit A**, should be disallowed as a secured claim. Any fees, accrued interest (disguised as an equity interest or otherwise), should be also disallowed. Should the court disallow this claim in its entirety.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ms. Cary prays for the following relief:

1.    Judgment against all of the Defendants in an amount to be proven at trial for recovery of her out of pocket damages, as well as the value of the injuries she has suffered;

2.    Treble damages up to $25,000.00 for each of Ms. Cary's categories of damage and injury as provided under the CPA;

3.    Any statutory damages available under federal or state lending laws, including recovery of costs Ms. Cary has already paid through the escrow process;

4.    An award of attorneys' fees and costs in an amount to be proven at trial;

THIRD AMENDED COMPLAINT - 33

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

5.      Disallow Claim 11 in its entirety.

6.      Quiet Title in favor of Debtor, against the PATCH Defendants;

7.      Rescind the loan made by the PATCH Defendants;

8.      For injunctive relief against all of the Defendants to prevent any other Washington consumers from being harmed by the unlawful, unlicensed business activities of all of the Defendants; and

9.      For such other and further relief as the Court deems just and proper.

DATED this _____ day of June, 2022.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

By: */s/Melissa A. Huelsman*
   Melissa A. Huelsman, WSBA #30935
   Attorney for Plaintiff
   705 2nd Ave, Ste 606
   Seattle, WA 98104-1715
   Tel# 206-475-4504
   *mhuelsman@predatorylending law.com*

LAW OFFICES OF MARK MCCLURE, PS

By: */s/Mark McClure*
   Mark McClure, WSBA #24393
   Attorney for Plaintiff
   1103 W. Meeker St, Ste 101
   Kent, WA 98032-5751
   Tel# 253-631-6484
   *mark@mcclurelawgroup.com*

HENRY & DEGRAAFF, PS

By: */s/ Christina L. Henry*
   Christina L. Henry, WSBA #31273
   Attorney for Plaintiff
   113 Cherry Street, PMB 58364
   Seattle, WA 98104-2205
   Tel# 206-330-0595
   *chenry@hdm-legal.com*

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

THIRD AMENDED COMPLAINT - 34

# EXHIBIT B



The —Honorable LAUREN KINGTHOMAS W DORE

~~Chapter 13~~
~~Seattle, WA~~

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

~~IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE~~

| | |
|---|---|
| BEVERLY JANE CARY,<br><br>Debtor.<br><br>BEVERLY JANE CARY,<br><br>Plaintiff,<br><br>v.<br><br>PATCH SERVICES, LLC d/b/a NOAH; PATCH HOMES, INC.; FIRST AMERICAN TITLE INSURANCE COMPANY LENDERS ADVANTAGE,<br><br>Defendants. | Dist Ct. Case 2:22-cv-00538-LK<br><br>Chapter 13 Case No. **20-12450 TWD**<br><br>Adversary Case No. ~~22-01000 TWD~~<br><br>~~SECOND~~[PROPOSED] THIRD AMENDED COMPLAINT:<br><br>(1)  TO DETERMINE NATURE AND EXTENT OF LIEN, IF ANY AND TO QUIET TITLE;<br>(2) VIOLATION OF RCW 31.04, *et. seq.*, WA CONSUMER LOAN ACT, WHICH CONSTITUTES A *PER SE* VIOLATION OF THE WA CONSUMER PROTECTION ACT, RCW 19.8~~86~~, *et seq.*;<br>(3) WA USURY STATUTE, RCW 19.52, *et seq.*, WHICH CONSTITUTES A *PER SE* VIOLATION OF THE WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.*<br>(4) WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.*;<br>(5) INTENTIONAL AND NEGLIGENT MISREPRESENTATION;<br>~~(6) WA~~ (6) CONSUMER PROTECTION ACT, RCW 19.86, *et seq.*, VIOLATION BASED UPON VIOLATIONS OF THE WA ~~ESCROW AGENT~~ |

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 1

REGISTRATION ACT, RCW 18.44, *et seq*., ~~WHICH CONSTITUTES A *PER SE* VIOLATION OF THE WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.*~~ AND OTHER ACTIONS;
(7) VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601, *et seq.*;
(8)  VIOLATIONS OF THE TRUTH IN LENDING ACTION, 15 U.S.C. § 1639c(e)(3);
(9) WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.* RE: UNLAWFUL ARBITRATION CLAUSE;
(10) OBJECTION TO CLAIM 11

COMES NOW Debtor and Plaintiff Beverly Jane Cary to pursue her claims that

Defendants' joint and several acts ~~constitute~~constituted violations of numerous Washington

statutes, including the Consumer Loan Act, RCW 31.04, *et seq.* ~~and the Escrow Agent Act,~~

~~RCW 18.44, *et seq.*~~.("CLA"), which ~~constitute~~constitutes a *per se* violation of the Washington

Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; stand-alone violations of the

Consumer Protection Act, RCW 19.86, *et seq.*~~:~~., including a violation which is related to

violations of the Escrow Registration Agent Act, RCW 18.44, *et seq.* and other actions;

violations of the Usury statute, RCW 19.52, *et seq.*; Intentional and Negligent

Misrepresentation; to Quiet Title as against the PATCH Defendants' unlawful lien; violations

of the Truth in Lending Act,  15 U.S.C. § 1601, *et seq.*, including 15 U.S.C. § 1639c(e)(3) and

form the basis for her ~~objection~~Objection to ~~claim 11~~Claim and avoidance of the PATCH

Defendants' Deed of Trust.

## I.  PARTIES, JURISDICTION AND VENUE

1.1    Defendant PATCH HOMES, INC d/b/a NOAH, referred to herein as

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 2

Formatted: Tab stops:  2.51", Left

("PATCH") was formed under the laws of the state of Delaware. Defendant PATCH was not registered with the Washington Secretary of State as a foreign corporation until **September 5, 2019**. Its nature of business was listed as "Home Equity". It became inactive on January 5, 2021 due to not filing the requisite documentation with the Washington Secretary of State. Defendant PATCH is not licensed with the Washington Department of Financial Institutions ("DFI") as a consumer lender, as required by RCW 31.04.025(1); 31.04.035(1). Defendant PATCH did register with the Washington Department of Revenue but there is~~are~~ no records indicating it has ever paid taxes for conducting business in the State of Washington.

1.2     Defendant PATCH SERVICES, LLC ("Patch Services") is a Delaware limited liability company that was registered with the Washington Secretary of State as a foreign LLC on March 9, 2021. Its nature of business is listed as "Financial Servicers Provider". Defendant Patch Services is not licensed by Washington DFI as a consumer lender or loan servicer.

Defendants PATCH and Patch Services appear to interchangeably use their names in the subject loan documents referring to themselves or being referred to as either "lender" or "investor".

1.3     Defendant FIRST AMERICAN TITLE INSURANCE COMPANY LENDERS ADVANTAGE ("Lenders Advantage") appears to be licensed in Washington state with the Office of the Insurance Commissioner using only the name FIRST AMERICAN TITLE COMPANY. It acted as an escrow agent in connection with the loan closing of the subject transaction. Ms. Cary will be investigating its licensing in Washington state to make certain that it is compliant such that it could act as an escrow agent in Washington. In connection with that closing, Defendant Lenders Advantage required Beverly to sign an Escrow Agreement which includes a mandatory arbitration clause. Mandatory arbitration clauses are expressly

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 3

Formatted: Tab stops:  2.51", Left

prohibited under federal law in connection with residential mortgage loans which are the principal dwelling of the borrower. Other entities in the making of the loan, such as escrow companies, cannot assist lenders in trying to avoid that requirement by including a mandatory arbitration clause in other contractual terms.

1.4 **Jurisdiction**. This adversary proceeding is commenced pursuant to BR 7001 *et seq.* and 11 U.S.C. §§ 502 (b)(1) and 506 (d). Although an adversary proceeding brought as an objection to claim with a counterclaim is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (K) and/or (O) with non-core matters. Since the issues raised in this adversary proceeding include counterclaims that go beyond resolution of the claim itself, this matter is a non-core claim that lies beyond the scope of the creditor's proof of claim. Thus, outside of the bankruptcy context, many of the claims would not otherwise *require* adjudication in an Article III Court. *See, Stern v. Marshall,* 564 U.S. 462, 496–98 (2011) (finding that a bankruptcy court had no constitutional power to evaluate the debtor's common law tort counterclaims because such claims were beyond the scope of the creditor's proof of claim and were claims of a nature that required an Article III court's adjudication).

1.5 **Jurisdiction**. The Plaintiff is also requesting a jury trial and does not consent to have the jury matters heard in bankruptcy court and does not waive her rights. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41 (1989).

1.6 **Venue**. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. **FACTS**

2.1 Beverly is a single woman who has lived in King County for most of her life. She has one daughter, Alycia, who is currently 34 years old. Alycia's son Kameron is now 7 years old and been diagnosed as autistic. The two of them have lived with Beverly since 2015.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECOND THIRD AMENDED COMPLAINT - 4

2.2     She worked for Delta Airlines as flight attendant for 31 years and she retired on December 1, 2001, after receiving a payout offer from Delta following the September 11 crashes. She received a monthly pension payment from Delta until she reached the age of 62 when it was reduced due to her beginning to receive Social Security. She still receives some of her pension income along with her Social Security, but her income is not substantial. Between the ages of 52 and 62, she also worked jobs at Home Depot, Chicos and the like to earn some extra money and increase future Social Security earnings.

2.3     In 1998, Beverly had a custom home built for her in Maple Valley, which she sold in 2006 in order to downsize. She made a profit of approximately $210,000.00. She decided to rent for a while~~a while~~awhile and in 2007, she purchased her current residence, located at 27834 31st Place South, Auburn, WA 98001-1819 ("Property") by putting down $150,000.00. She obtained a traditional mortgage to make the purchase and made the monthly payments while living in it until September 2009, when she moved to Florida to be near her closest friend and take a break from the Pacific Northwest. She could not sell the Property at that time without taking a significant loss due to the collapsed housing market. Instead, she rented it out and used those funds to make the mortgage payments.

2.4     Beverly returned to Washington in 2012 because her daughter was talking about getting married and it was time to come home. She rented a place while continuing to rent out the Property until August 2015. In September 2015, Alycia, Kameron and Alycia's husband Rick moved in. Later in 2015, Beverly refinanced the Property in order to reduce her interest rate from 6.35% to 4.56%. This resulted in a new mortgage with a balance of $110,000.00 and a monthly payment of $879.00.

2.5     By 2018, Beverly had very significant credit card debt and needed to get it under

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 5

Formatted: Tab stops:  2.51", Left

control, so she refinanced the Property again and ended up with a payment of $1,150.00 per

month after she was paid off approximately $50,000.00 in other debt.

2.6     The reason Beverly was struggling financially and incurring significant credit

card debt is because of unlawful charges incurred in her name by her daughter Alycia. Even

after the 2018 refinance, her credit card debt and balance on her car loan was approximately

$62,000.00, some of which was attributable to fraudulent charges by Alycia on her credit cards

and from Alycia stealing her debit card and making unauthorized withdrawals.

2.7     Alycia's drug problems began when she fell at work and seriously injured her

back. She had unsuccessful back surgeries, including a failed spinal fusion in 2013. As a result,

she became addicted to pain killers, which began to destroy her life.  Beverly did not realize the

problems Alycia was having with the drugs until she moved into her home in September 2015.

Once Alycia and her husband moved in with her, they began borrowing money from her for

legitimate purposes, but it also became apparent that Alycia was also using the money for drugs

as well. Beverly found herself devastated by her daughter's addiction and her efforts to deal

with it, but also the financial damage Alycia's actions continued to cause Beverly.

2.8     Compounding Beverly's stress was the fact that Alycia went to rehab once and a

detox place three times beginning in 2020 and nothing worked to stop her addiction.  Alycia

and Rick separated about a year after they moved in and they were fighting over custody of her

grandson Kameron. Beverly helps care for Kameron and he has some serious problems. He was

born premature with lung damage and has been diagnosed as autistic. All of this just makes the

pressures on Beverlyher almost unbearable.

2.9     Beverly's financial problems became exacerbated as Alycia continued to use her

credit and debit cards without permission and in spite of Beverly's efforts to prevent her from

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECONDTHIRD AMENDED COMPLAINT - 6

**Formatted:** Tab stops:  2.51", Left

having access to them. She also stole checks and gained access to Beverly's VENMO account to steal more money. Alycia kept running up very significant debt in Beverly's name again and again. While Beverly was stressing out in 2019 about how she would ever be able to pay off the debt and knowing that it was unlikely she could obtain a traditional refinance, she was attracted by a mailing she received from PATCH Defendants. The appeal of the advertisement from Defendant PATCH was that the loan could close in two to three weeks ~~with~~and the promise of providing a loan to people who could not get traditional loans. Because Beverly was desperate for a loan that would relieve the financial pressures she was facing, a quick closing without traditional underwriting was very attractive.

2.10    Alycia became aware that Beverly was considering entering into the loan with PATCH Defendants and was ~~pressured~~pressuring her to get it. She was desperate and believed that no other options that included saving her home existed.  She was also about to turn 70 and believed she wouldn't be able to work her way out of her desperate financial situation. Defendant PATCH offered very slick advertising and enticed Beverly into reaching out.  Bev called the telephone number on the Defendant PATCH mailer but does not specifically remember with whom she spoke. The PATCH Defendants offered her what she interpreted as a loan since they were going to give her money to pay off her unsecured debt and she would have to repay it ~~with~~plus interest at a later date. This was no ordinary loan, however, and Beverly did not receive any disclosures in advance of entering into the loan which she could assess or analyze in order to understand the loan terms.

2.11    While the PATCH Defendants ~~entitles~~entitle and ~~describes~~describe their contract as a "Purchase Option Agreement" and repeatedly disavows that it is a loan, the documents provided by the escrow company, Defendant Lenders Advantage, to Beverly for

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 7

**Formatted:** Tab stops:  2.51", Left

signing referred to the documents as a "loan" and the proceeds as "Loan Amount"

~~approximately118~~approximately 118 times. In numerous places throughout the documents

drafted and presented to Beverly for signature by Defendant PATCH, there are references to

amounts financed, fees and charges that Beverly must re-pay or pay outright that are solely for

the benefit of the PATCH Defendants and to increase its profit when it obtains repayment of

the amounts advanced to Beverly, as well as its profit from the transaction.

2.12    PATCH Defendants did not suggest that Beverly should look at other options to

deal with her credit cards including credit counseling, seeking a further traditional refinance,

credit counseling, a reverse mortgage, or to discuss her situation with a bankruptcy attorney.

While PATCH is not obligated to have these discussions, it is important in this instance since

their product was being represented as not a loan at an effort in inducing her to choose it,

instead of the other options. In fact, Beverly does not recall any of the discussions she had with

PATCH Defendants wherein anyone told her she had the right to have the loan documents

reviewed by an attorney. She has now been made aware that the documents she signed

contained that language, but she has no memory of seeing it.

2.13    Most importantly, Beverly did NOT receive the loan disclosures required under

federal and state lending laws in advance of the loan signing. Instead, she was provided with

alleged summaries of the documentation that no layperson would ever be able to actually

understand and certainly no layperson would ever be able to understand the true cost associated

with the making of this loan, nor of the risk of loss of homeownership that is very real given the

outrageous terms. 12 C.F.R. § 1024.2(b) defines a "federally regulated mortgage loan" as

follows:

Federally related mortgage loan means:

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 8

Formatted: Tab stops:  2.51", Left

1

2

3

4

5

6

7

8

(1) Any loan (other than temporary financing, such as a construction loan):
(i) That is secured by a first or subordinate lien on residential real property,
including a refinancing of any secured loan on residential real property, upon
which there is either:
(A) Located or, following settlement, will be constructed using proceeds of the
loan, a structure or structures designed principally for occupancy of from one to
four families (including individual units of condominiums and cooperatives and
including any related interests, such as a share in the cooperative or right to
occupancy of the unit);
. . . .

12 C.F.R. § 1024.2(b). Ms. Cary's loan meets that definition.

9

10

11

12

13

14

15

16

17

18

19

20

21

     2.14    Under federal law, creditors may not generally exclude charges from the

disclosed finance charge that are payable by the consumer incident to the extension of credit as

required by 15 U.S.C. § 1605 and Regulation Z § 1026.4.  If the creditor fails to include such a

charge, it improperly discloses the finance charge in violation of 15 U.S.C. § 1638(a)(3) and

Regulation Z § 1026.18(d).  If the PATCH Defendants had actually calculated the annual

percentage rate (APR) and disclosed it in advance of the making of the loan, as required by the

Truth in Lending Act, the rate would have been based upon improperly calculated and

undisclosed finance charges and an overstated amount financed in violation of 15 U.S.C. §

1606, Regulation Z § 1026.22. A creditor also unlawfully understates the APR in violation of

15 U.S.C. § 1638(a)(4) and Regulation Z § 1026.18(e).  Regulation Z defines the term

"finance charge" as "the cost of consumer credit." 12 CFR § 1026.4 (2004).

22

23

24

25

     2.15    The PATCH Defendants did not comply at all with any of the TILA provisions

regarding advance disclosure of the loan terms in advance of the loan signing. This also

violated the Washington Consumer Loan Act which incorporated TILA requirements into its

language.

26

27

     2.16    The PATCH Defendants are covered by TILA loan disclosure requirements

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 9

**Formatted:** Tab stops:  2.51", Left

1  because they make more than five (5) loans per year. The PATCH Defendants were required to

2  provide Ms. Cary with the Loan Estimate within three business days of the receipt of the

3  consumer's loan application. 12 C.F.R. § 1026.19(e)(1). That Estimate must contain a good

4  faith estimate of credit costs and transaction terms. If any information necessary for an accurate

5  disclosure is unknown, the creditor must make the disclosure based on the best information

6  reasonably available at the time the disclosure is provided to the consumer and use due

7  diligence in obtaining the information. 12 C.F.R. § 1026.19(e)(1)(i); Comment 19(e)(1)(i)-1).

8  The Estimate must be in writing and contain the information prescribed in § 1026.37. The

9  creditor must disclose only the specific information set forth in 12 C.F.R. § 1026.37(a) through

10 (n), as shown in the CFPB's form in appendix H-2, consistent with 12 C.F.R. § 1026.37(o).

11      2.17   Delivery must satisfy the timing and method of delivery requirements. The

12 creditor is responsible for delivering the Loan Estimate or placing it in the mail no later than

13 the third business day after receiving the application. 12 C.F.R. § 1026.19(e)(1)(iii). The

14 PATCH Defendants were required to use form H-24, promulgated by the CFPB. 12 C.F.R. §

15 1026.37(o)(3)(i). PATCH Defendants did not make any disclosures within three business days

16 of Ms. Cary's application or at all, nor did they use form H-24.

17      2.18   Rather than providing Beverly with standard loan terms which complied with

18 federal and state lending laws, ~~The~~the PATCH Defendants demanded that she re-pay the loan

19 with a percentage of her home's equity through a complex labyrinth of loan terms that no

20 average consumer and even most experienced lawyers would be able to follow and understand,

21 let alone calculate the interest rate, repayment requirements, etc. The Agreement also included

22 an initial reduction in the alleged value of the Property and allowed Defendant PATCH to

23 exclusively control the process of determining the value of the Property throughout the history

24
25
26
27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 10

Formatted: Tab stops:  2.51", Left

of the transaction.

2.19    Further, the unlawful loan provided by the PATCH Defendants included a requirement, not disclosed in advance and only provided at the loan signing, of a **non-revocable** Power of Attorney ("POA") giving the PATCH Defendants the power to control the entirety of the contractual relationship and stealing from Beverly any control she might have over her home, the Property.  The very broad powers in the POA includes: (1) allowing Defendant PATCH to force the sale of Beverly's home in the event she files a bankruptcy and if Beverly fails to "maintain", "preserve" or "repair" the Property according to the unilateral discretion of Defendant PATCH.  The definition of "maintain" and "repair" ~~includes~~include such generic terms as keeping the Property in "good condition". Again, allowing Defendant PATCH to decide for itself and without giving Beverly any ability to challenge its decisions, whether she is or is not keeping the Property in "good condition", which then permits Defendant PATCH to force the sale of her home and repeat its very significant profits that it disavows is interest. Beverly maintains that the amounts over and above what was loaned to her is interest that Defendants seek to mischaracterize in an effort at avoiding federal and state lending laws.

2.20    Believing there were no other options and facing immense financial pressure, Beverly signed the PATCH Defendants' documents on or about **July 3, 2019**, approximately two months **before** Defendant PATCH had registered to conduct any business in the State of Washington. And as noted above, Defendant PATCH was not then and never has been licensed to engage in consumer lending and to take a lien interest on Beverly's residence in the State of Washington.  That lien is evidenced by a Deed of Trust, which is consistent with Washington's requirements that any encumbrance be evidenced by a deed. RCW 64.04.010. The PATCH

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 11

**Formatted:** Tab stops:  2.51", Left

Defendants' Deed of Trust is most certainly an "encumbrance". Further, a deed of trust in

Washington is treated as a mortgage on real property. RCW 61.24.020. This is irrespective of

the PATCH Defendants efforts to characterize the transaction as anything other than a

mortgage loan. *See also,* RCW 61.24.005(2) which defines "beneficiary" in a deed of trust as

"the holder of the instrument or document evidencing the obligations secured by the deed of

trust". Defendant PATCH has identified itself as the "beneficiary" in the Deed of Trust it

required Beverly to sign.

2.21    Beverly failed to understand ~~the~~ core terms of the loan, which is understandable

when one tries to read the complex and Byzantine terms included in the loan documents, such

as Defendant PATCH's claim of a right to force the sale of her home prior to the end of the 10

year term of the loan; exactly how the repayment amount will be calculated; how much Beverly

would owe six (6) months after the documents were signed; how much would be owed after

twelve (12) months; how much would be owed after three (3) years, and so on.  In return for

the approximately $62,000 that Defendant PATCH paid out on the loan to Beverly and on her

behalf for her debts, Beverly had no idea that it would demand in excess of $126,000.00 less

than three years later, as it has done in her bankruptcy case.

2.22    Among the other absurd terms of the unlawful loan made by the PATCH

Defendants are the following, including terms of the Real Estate Option Agreement, Sections

5.3, 6.1, 6.2, 7 and 19, including subsections and in particular, Section 20, which requires

Beverly to indemnify Defendant PATCH f or any potential claims while there is no obligation

from Defendant PATCH to Beverly:

        a.      It allows the "Investor", Defendant PATCH, to order an appraisal
without Beverly's consent and to charge her for it;

        b.      If Beverly disagrees with the appraised amount, she has to pay for

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 12

**Formatted:** Tab stops:  2.51", Left

another one herself and if she and Defendant PATCH cannot reach an agreement, she is required to arbitrate the issue. As noted above, mandatory arbitration in connection with the making of a residential mortgage loan which is Beverly's principal dwelling is illegal under federal law;

c.      The Owner, Beverly, will have a different required "payout" amount depending upon what sort of transaction she enters into in the future to either refinance the Property, sell it to a third party, sell it to Defendant PATCH, etc. These are the sort of uncertain and differing repayment terms which violate federal and state lending laws;

d.      Specific assertions of what Beverly has to repay Defendant PATCH while simultaneously contending that the transaction is not a loan and that interest is not being charged.

2.23    In spite of the PATCH Defendants' repeated assertions throughout the loan documents that the transaction is not a loan, the accompanying Deed of Trust confirms that ~~a loan~~that is precisely the nature of the transaction in multiple places . Paragraph 7 begins with the following language:

Default and Foreclosure and Power of Sale.

Upon default by Trustor in the performance of or upon breach by Trustor of any of the rights and obligations that are secured by this Security Instrument as specified above, **Beneficiary may declare all sums secured by this Security Instrument immediately due and payable and may invoke the power of sale and any other remedies permitted by applicable law, including an action in any court of competent jurisdiction to foreclose this Security Instrument as a deed of trust or mortgage.**

Deed of Trust, Paragraph 7 (emphasis added). The Trustor is Ms. Cary and the Beneficiary is Defendant PATCH.

2.24    The Deed of Trust at Paragraph 10 also gives the Trustee powers that only the Beneficiary may demand it exercise, in contravention of its duties under Washington law to both the "borrower" (in this instance, the borrower is identified as the "Trustor") and the "beneficiary". RCW 61.24.010(4).

2.25    At Paragraph 12, the exclusive duty to pay for the services of the Trustee, which only Defendant PATCH controls and directs, is to be borne by Trustor, Ms. Cary. This too is a

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 13

**Formatted:** Tab stops:  2.51", Left

blatant violation of Washington law and further evidences just how much the entirety of the

subject loan transaction is one-sided and designed to guarantee that Ms. Cary ends up losing

her home and all of the equity in it to Defendant PATCH.

2.26    The Deed of Trust also purports to be a separate lien on personal property that is

part of the Property, including fixtures, under UCC Article 9. This assertion is absurd and

contradictory to the provisions of Washington law that makes clear that a deed of trust secures

real property and only real property. Further, "fixtures" are not separate from structures on and

part of real property.

2.27    Ms. Cary is not listing all of the onerous and unlawful terms of the loan

agreement herein, but she does assert that every part of the loan documentation violates federal

and state lending laws, as well as Washington real property law. She also did not realize she

had agreed to a mandatory arbitration clause until the loan documents were reviewed with her

attorneys. Had she not taken action to reject the loan terms and rescind the loan entirely under

TILA with the assistance of her attorneys, she would have been bound by all of the loan terms,

including the unlawful mandatory arbitration clause.

2.28    The PATCH Defendants may have further violated TILA and state law when it

made the unilateral decision to have Ms. Cary's escrow handled by an escrow agent, Defendant

Lenders Advantage, which may not licensed in Washington state in a manner that allowed it to

act as an escrow agent in Washington state. The escrow paperwork indicated that Defendant

Lenders Advantage was operating under a California license – not a Washington license. If

Defendant Lender's Advantage is actually just a part of First American Title Insurance and is

licensed by the Washington Department of Insurance, then it can act as an escrow agent in

Washington as long as it complies with the Escrow Agent Registration Act, RCW 18.44, *et seq.*

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 14

**Formatted:** Tab stops:  2.51", Left

2.29    Defendant Lenders Advantage also included a mandatory arbitration agreement in its escrow paperwork which is prohibited by TILA. That agreement purports to require arbitration of any and all disputes relating to the loan terms. By doing so, Defendant Lenders Advantage was acting in collusion with the PATCH Defendants to further violate TILA which prohibits the use of a mandatory arbitration agreement in connection with a federally regulated mortgage loan. 15 U.S.C. § 1639c(e)(3). The PATCH Defendants cannot use a third party to impose terms upon a borrower that are prohibited by federal law.

2.30    As evidenced by the fact that Beverly had to file a Chapter 13 bankruptcy, obtaining a loan from Defendant PATCH did not solve Beverly's financial problems. She found herself back in financial trouble again due to Alycia's continued addiction problems. She was required to file this bankruptcy to get some relief, but that was how she discovered the horrific nature of the loan she obtained from Defendant PATCH when she had to try to figure out how much she owed on the loan after a short period of time.

2.31    Upon request by Beverly's bankruptcy counsel, Defendant PATCH provided a "Final Payoff Statement" in the amount of $126,554.00 dated March 5, 2021. Defendant PATCH later filed a Proof of Claim in the amount of $122,500.00 on July 5, 2021.  Apparently, Defendant PATCH cannot even calculate its own payoff calculations using the formula it created. But these amounts make it very clear that the transaction is a loan and a very expensive one at that. Defendant PATCH lent Ms. Cary $64,000.00 on or about July 13, 2019 and less than two years later, it was demanding almost double that amount in repayment. That constitutes an interest rate of almost 50% per annum.

2.32    Defendant PATCH has even gone so far as to try to repeatedly oppose Beverly's attempts to get lawyers hired to represent her in challenging the validity of this loan agreement,

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 15

**Formatted:** Tab stops:  2.51", Left

1  telling this Court that Beverly doesn't have a right to challenge its unlicensed loan product and

2  making threats about incurring legal fees in connection with its efforts to prevent her from

3  obtaining recovery that Defendant PATCH maintains it can charge her under the loan contract.

4  In other words, Defendant PATCH is using its high-priced Silicon Valley lawyers to waste this

5  Court's time by making frivolous arguments and legally unsupported opposition to Ms. Cary's

6  right to challenge the terms of this unlawful loan while preparing to charge her for those

7  efforts. This is yet another example of the horrific and onerous nature of the contractual terms

8  of the unlawful loan provided to Beverly by Defendant PATCH, and the predatory nature of

9  Defendant PATCH and all of its affiliated entities, as well as the members of the Defendants'

10  LLCs.

11  

12  2.33    Defendant Lenders Advantage has acted in collusion with the other Defendants

13  to facilitate this unlawful loan by providing escrow services in Washington state when it ~~is~~may

14  not be licensed to do so, and by insisting that Ms. Cary sign an escrow agreement that includes

15  a mandatory arbitration agreement, in direct contravention of the federal lending laws.

16  2.34    Beverly has incurred damages and been injured in amounts to be determined

17  later by the trier of fact but which include at this stage illegal and unlawful demands for interest

18  and fees which Defendant PATCH is demanding in violation of Washington law. As outlined

19  below, a loan made by an unlicensed lender which is secured by a residence does not allow the

20  lender to recovery **any fees or interest** on the loan. RCW 31.04.035(2). She has also incurred

21  attorneys' fees and costs relating to having to obtain information from the PATCH Defendants

22  about the alleged loan balance, and to respond to the Proof of Claim and other efforts in her

23  Chapter 13 bankruptcy attributable to the actions of the PATCH Defendants. Further, Ms. Cary

24  is required to take this action to make certain that the unlawful arbitration clause is not included

25  

26  

27  

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 16

Formatted: Tab stops:  2.51", Left

in the loan agreement with the PATCH Defendants and to make certain that the PATCH

Defendants cannot enforce the unlawful terms which it has tried to impose upon Ms. Cary, in

contravention of federal and state lending laws.

### III.  CAUSES OF ACTION

First Cause of Action
Quiet Title and To Determine
The Nature and Extent of Any Lien
as Against Defendants PATCH and Patch Homes

3.1     Ms. Cary incorporates herein by reference as though fully set forth at length

each and every allegation and statement contained in the paragraphs above, inclusive, of the

Factual Allegations above.

3.2     Under Washington law, RCW 7.28.010, Ms. Cary has the right to bring this

action in order to remove the cloud on title in the form of an unlawful mortgage loan secured

by a Deed of Trust that has been generated, created and recorded against the subject real

Property by Defendants PATCH and Patch Homes, in an attempt to gain for in a monetary

recovery against the Property to which it is not entitled, as it is above and beyond any right it

may have for making an unlawful loan.

Second Cause of Action
Violation of the Consumer Loan Act, which is a
*Per Se* Violation of the Consumer Protection Act
as Against Defendants PATCH and Patch Homes

3.3     Ms. Cary incorporates herein by reference as though fully set forth at length

each and every allegation and statement contained in all of the Sections above, inclusive, and

the Facts Statements, inclusive, and Paragraphs 3.1 through 3.2 of the Causes of Action above.

3.4     The Consumer Loan Act, RCW 31.04.035, **requires** any person or entity to be

licensed under the CLA if they obtain a lien on a borrower's residence. Defendants PATCH

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECONDTHIRD AMENDED COMPLAINT - 17

Formatted: Tab stops:  2.51", Left

1   and Patch Homes do not have a license to make a consumer loan and the loan transaction at

2   issue is a consumer loan secured by Ms. Cary's residence. A violation of RCW 31.04.035 is a

3   *per se* violation of the Consumer Protection Act and as such, Defendants PATCH and Patch

4   Homes are liable to Ms. Cary for their violations of the law, as more particularly described

5   above in Facts Section.

6

7        3.5    A *per se* violation of the CPA under the CLA, RCW 31.04.208, meets the

8   requirements of (1) unfair or deceptive act, (2) in trade or commerce, and (3) affecting the

9   public interest. *Id.* As identified above, Ms. Cary has suffered injuries and incurred damages as

10  a direct result of the actions of Defendants PATCH and Patch Homes in connection with their

11  violations of the CLA. Therefore, she is entitled to recover damages, treble damages and

12  reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief

13  to make certain that other Washington consumers are not similarly harmed by the actions of

14  Defendants PATCH and Patch Homes. In addition, Defendants PATCH and Patch Homes may

15  not collect **any** interest on the loan nor any fees, and if any of these amounts have already been

16  paid by Ms. Cary, either through the loan terms or other means, Defendants PATCH and Patch

17  Homes must refund those amounts to her under Washington law.

18

19                    Third Cause of Action
20           Violation of the Washington State Usury Statute
             Which is a *Per Se* Violation of the CPA
21          as Against Defendants PATCH and Patch Homes

22        3.6    Ms. Cary incorporates herein by reference as though fully set forth at length

23  each and every allegation and statement contained in all of the Sections above, including the

24  Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.5 of the

25  Causes of Action above.

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 18

3.7     Under RCW 19.52.020(1),

(1) Except as provided in subsection (4) of this section, any rate of interest shall be legal so long as the rate of interest does not exceed the higher of: (a) Twelve percent per annum; or (b) four percentage points above the equivalent coupon issue yield (as published by the Board of Governors of the Federal Reserve System) of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the later of (i) the establishment of the interest rate by written agreement of the parties to the contract, or (ii) any adjustment in the interest rate in the case of a written agreement permitting an adjustment in the interest rate. No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater interest for the loan or forbearance of any money, goods, or things in action.

RCW 19.52.020(1).

3.8     Given the current interest rate published by the Board of Governors of the

Federal Reserve System is extremely low, the effective cap on interest rates in Washington

state is twelve percent (12%) per annum. The loan made to Beverly by Defendants PATCH and

Patch Homes carries an interest rate demonstrably in excess of 12 percent per annum based

upon the amounts demanded by the PATCH Defendants in her Chapter 13 bankruptcy.

3.9     RCW 19.52.030 also provides that:

(1) If a greater rate of interest than is allowed by statute shall be contracted for or received or reserved, the contract shall be usurious, but shall not, therefore, be void. If in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the creditor shall only be entitled to the principal, less the amount of interest accruing thereon at the rate contracted for; and if interest shall have been paid, the creditor shall only be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the debtor shall be entitled to costs and reasonable attorneys' fees plus the amount by which the amount the debtor has paid under the contract exceeds the amount to which the creditor is entitled . . .

RCW 19.52.030(1).

3.10     Consistent with the Usury statute, Ms. Cary is entitled to recover **twice** the

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 19

Formatted: Tab stops:  2.51", Left

interest that she has already paid on the loan, which in this case may be that amount which the PATCH Defendants are demanding in the bankruptcy has already "accrued" and should be deducted from the equity in her home. The PATCH Defendants is only entitled to recover the principal amount provided to Ms. Cary, less any interest which has been accrued and to recover her reasonable attorneys' fees and costs incurred to date. This will also include the costs she was charged in connection with the making of the loan, including the escrow and other fees.

3.11    The Usury statute also allows for a *per se* CPA violation in the event of a violation of the statute. RCW 19.52.036. A violation of the statute meets the unfair or deceptive and trade or commerce elements of the CPA.

3.12    Ms. Cary can prove the "public interest" element of a CPA claim which requires proof that the PATCH Defendants "had the capacity to injure other persons" and "has the capacity to injure other persons" because it continues in its business as of the writing of this Amended Complaint. This is also evidenced by the actions of the PATCH Defendants in Ms. Cary's bankruptcy wherein they tried to collect a usurious interest amount by filing a Proof of Claim for the same and because of its actions to try to prevent Ms. Cary from being able to hire lawyers to represent her.

3.13    Ms. Cary, acting through her attorneys, is also aware that the PATCH Defendants continue to do business by advertising online through the Noah website offering the same products that she was conned into signing.

3.14    Ms. Cary has suffered injuries and incurred damages as a direct result of the actions of Defendants PATCH and Patch Homes in connection with their violations of the Washington usury statute. Therefore, she is entitled to recover damages, treble damages and reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 20

Formatted: Tab stops:  2.51", Left

1    to make certain that other Washington consumers are not similarly harmed by their actions. In

2    addition, the PATCH Defendants may not collect **any** interest on the loan nor any fees, and if

3    any of these amounts have already been paid by Ms. Cary, either through the loan terms or

4    other means, the PATCH Defendants must refund double those amounts to her under

5    Washington law.

6

7                              Fourth Cause of Action
                       Violation of the Consumer Protection Act
8                  as Against Defendants PATCH and Patch Homes

9          3.15    Ms. Cary incorporates herein by reference as though fully set forth at length

10   each and every allegation and statement contained in all of the Sections above, including the

11   Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.14 of

12   the Causes of Action above.

13         3.16    The PATCH Defendants have made numerous misrepresentations about the

14   terms of the contract and whether or not it is a loan, whether the terms of the loan are compliant

15   with Washington state law (they are not) and whether the loan can even be made under

16   Washington law, as well as the amounts owing under the loan and whether PATCH Defendants

17   can charge her interest and any fees on the loan, as more particularly described above.  These

18   misrepresentations were unfair and deceptive, and they occurred in trade or commerce, which

19   is PATCH Defendants' business model and purpose.

20

21        3.17    Ms. Cary maintains, based upon information and belief, that the Defendants

22   have engaged in making similar misrepresentations to other Washington homeowners and/or

23   that it had the capacity to do so previously and/or has the capacity to do so in the future.

24

25        3.18    All of Ms. Cary's injuries and damages were caused by the PATCH Defendants

26   and they are directly responsible for those injuries and damages.

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 21

Formatted: Tab stops:  2.51", Left

1

<u>Fifth Cause of Action</u>
<u>Intentional and Negligent Misrepresentation</u>
<u>as Against PATCH Defendants</u>

2

3    3.19    Ms. Cary incorporates herein by reference as though fully set forth at length

4    each and every allegation and statement contained in all of the Sections above, including the

5
     Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.18 of
6
     the Causes of Action above.
7

8    3.20    Ms. Cary maintains that there were numerous intentional and/or negligent

9    misrepresentations made to her by the PATCH Defendants about the terms of the loan, by and

10   through their agents, as described more particularly hereinabove.

11
     3.21    Ms. Cary was particularly harmed by the specific misrepresentations made by
12
     the representatives of PATCH Defendants about the terms of the loan, and intentional
13

14   omissions about the loan terms prior to signing since they did not provide her with any

15   information about the loan terms in advance, as described more particularly in the Facts section

16   above.  Included in the misrepresentations were assertions regarding the fact that it is a loan, in

17   spite of PATCH Defendants' assertions to the contrary, the correct amount owing at any given

18   time after the loan is made, the amounts that may be demanded in connection with the loan

19
     under Washington law, and the rights to completely control all of the terms of the contract and
20
     whether or not Beverly is complying with the loan terms.
21

22   3.22    As a result of the actions of the PATCH Defendants, which is also referenced in

23   the loan documents, Beverly has been harassed for monies that she does not owe and now faces

24   the risk of losing her home and all of her equity therein.

25
     <u>Sixth Cause of Action</u>
26   <u>Violations of the Escrow Registration Agent Act, RCW 18.44, <i>et seq.</i></u>
     <u>Which Constitutes A Violation of the CPA as Against</u>
27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 22

Formatted: Tab stops:  2.51", Left

1
<u>Defendant First American Title Insurance Company Lenders Advantage</u>

2
      3.23    Ms. Cary incorporates herein by reference as though fully set forth at length

3
each and every allegation and statement contained in all of the Sections above, including the

4
Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.22 of

5
6
the Causes of Action above.

7
      3.24    RCW 18.44.011(8) defines who may act as an escrow agent under Washington

8
law:

9
      "Escrow agent" means any person engaged in the business of performing for
compensation the duties of the third person referred to in subsection (7) of this
10
      section.

11
RCW 18.44.011(8).

12
      3.25    RCW 18.44.011(7) describes the business practices which constitute an

13
"escrow" which is undertaken by an "escrow agent":

14
15
      "Escrow" means **any transaction**, except the acts of a qualified intermediary in
facilitating an exchange under section 1031 of the internal revenue code, **wherein
any person or persons, for the purpose of effecting and closing the sale,**
16
**purchase, exchange, transfer, encumbrance, or lease of real or personal
property to another person or persons, delivers any written instrument,**
17
**money, evidence of title to real or personal property, or other thing of value
to a third person to be held by such third person until the happening of a**
18
**specified event or the performance of a prescribed condition or conditions,
when it is then to be delivered by such third person, in compliance with**
19
**instructions under which he or she is to act, to a grantee, grantor, promisee,
promisor, obligee, obligor, lessee, lessor, bailee, bailor, or any agent or**
20
**employee thereof.** "Escrow" includes the collection and processing of payments
and the performance of related services by a third party on seller-financed loans
21
secured by a lien on real or personal property but excludes vessel transfers.

22
RCW 18.44.011(7). Emphasis added.

23
      3.26    Defendant Lenders Advantage is an "escrow agent" as defined by RCW

24
18.44.011(8) and it performed the acts described in RCW 18.44.011(7) in connection with

25
26
providing escrow services to Ms. Cary and the PATCH Defendants relating to the loan that is

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 23

Formatted: Tab stops: 2.51", Left

the subject of this litigation.

3.27   ~~Violations of the~~The Escrow Agent Registration Act, RCW 18.44.301 ~~include~~includes the following "Prohibited Practices":

It is a violation of this chapter for any **escrow agent**, controlling person, officer, designated escrow officer, independent contractor, employee of an escrow business, or other person subject to this chapter to:

(1) Directly or indirectly employ any scheme, device, or artifice to defraud or **mislead borrowers or lenders** or to defraud any person;
(2) **Directly or indirectly engage in any unfair or deceptive practice toward any person;**
. . . .
(4) **Knowingly make, publish, or disseminate any false, deceptive, or misleading information in the conduct of the business of escrow, or relative to the business of escrow or relative to any person engaged therein;**
. . . .
(11) **Fail to comply with any requirement of any applicable federal or state act including the truth in lending act, 15 U.S.C. Sec. 1601 et seq. and Regulation Z, 12 C.F.R. Sec. 226**; the real estate settlement procedures act, 12 U.S.C. Sec. 2601 et seq. and Regulation X, 24 C.F.R. Sec. 3500; the equal credit opportunity act, 15 U.S.C. Sec. 1691 et seq. and Regulation B, Sec. 202.9, 202.11, and 202.12; Title V, Subtitle A of the financial modernization act of 1999 (known as the Gramm-Leach-Bliley act), 12 U.S.C. Secs. 6801-6809; the federal trade commission's privacy rules, 16 C.F.R. Secs. 313-314, mandated by the Gramm-Leach-Bliley act; as these acts existed on January 1, 2007, or such subsequent date as may be provided by the department by rule, or any other applicable escrow activities covered by the acts;
. . . .

RCW 18.44.301(1), (2), (4), (11). Emphasis added.

3.28   Ms. Cary maintains that Defendant Lenders Advantage in actions more particularly described above which constituted violations of the Prohibited Practices, RCW 18.44.301(1), (2), (4) and (11) by engaging in a "scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person" (1); by "directly or indirectly engage in any unfair or deceptive practice toward any person" (2);  knowingly make, publish, or disseminate any false, deceptive, or misleading information in the conduct of the business of

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 24

Formatted: Tab stops:  2.51", Left

escrow, or relative to the business of escrow or relative to any person engaged therein (4); and

fail to comply with any requirement of any applicable federal or state act including the

truthTruth in lending actLending Act, 15 U.S.C. Sec.§ 1601 *et seq.* and Regulation Z, 12

C.F.R. Sec.§ 226 (11) when it consummated an obviously unlawful loan that included

paperwork which expressly disavowed being a loan and which obviously violated TILA in

numerous ways, including the fact that none of the documents required by TILA were included

in the loan documents.

   3.29   Defendant Lenders Advantage violated the Washington Consumer Protection

Act"("CPA"), RCW 19.86, *et seq.*, in connection with its actions during its handling of the

escrow for Defendant PATCH and Ms. Cary. Those actions are identified as follows:

   a.   It engaged in "unfair or deceptive acts or practices in the conduct of any trade or

commerce." RCW 19.86.020. Those "unfair" and "deceptive" acts included the inclusion of the

Arbitration Agreement in the Escrow General Instructions, which required that Ms. Cary

pursue **"all disputes and claims arising out of or relating to this Escrow must be resolved**

**by arbitration."**

   **19. AGREEMENT TO ARBITRATE.**
   (a)  Except as indicated in the paragraph regarding CONFLICTING
   INSTRUCTIONS & RELATED DISPUTES, above, **all disputes and claims**
   **arising out of or relating to this Escrow must be resolved by arbitration.**
   Notwithstanding the foregoing, any party may bring an individual action in small
   claims court. Any dispute as to the arbitrability of claims or the scope or
   enforceability of this arbitration provision, or as to the interpretation of paragraph
   (c) below, is for the court to decide. This Escrow evidences a transaction in
   interstate commerce, and thus the Federal Arbitration Act governs the
   interpretation and enforcement of this provision. This arbitration provision shall
   survive termination of the Escrow.

Escrow General Instructions, Paragraph 19. (Emphasis added.) Given the broad language of the

**AGREEMENT TO ARBITRATE** that Defendant Lender's Advantage required Ms. Cary to

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECONDTHIRD AMENDED COMPLAINT - 25

sign, it applies to any of her challenges to the entirety of the transaction with the PATCH

Defendants, as well as the escrow agent.

b.     The Truth in Lending Act (TILA) prohibits the use of an arbitration clause in

connection with mortgage lending secured by the borrower's primary dwelling. 15 U.S.C. §

1639c(e)(3). Thus, Defendant Lender's Advantage was actively engaged with the PATCH

Defendants in assisting them in violating those provisions of TILA and imposing an arbitration

clause upon Ms. Cary that is prohibited by federal law in this sort of lending transaction. These

actions constituted an unfair and deceptive act.

c.     Defendant Lender's Advantage also participated in an escrow for a transaction

that purported **not** to be a loan, but which it treated as a loan for purposes of the escrow,

including the execution of a Deed of Trust which is defined in Black's Law Dictionary as:

> An instrument in use in many states, taking the place and serving the uses of a
> common-law mortgage, by which the legal title to real property is placed in one or
> more trustees, **to secure the repayment of a sum of money or the performance**
> **of other conditions.**

Black's Law Dictionary. (Emphasis added.) This also constituted an "unfair" and "deceptive"

act, as well as publication and/or dissemination of "false" and "misleading" information to Ms.

Cary.

d.     Defendant Lender's Advantage engaged in that action in connection with its

business of providing escrow services, which constitutes "trade or commerce". Paragraph

19(a), "This Escrow evidences a transaction in interstate commerce . . ."

d.     Defendant Lender's Advantage's actions **had** and **has** "the capacity to injure

other persons."  RCW 19.86.093(c). This is demonstrated by way of the fact that the document

signed by Ms. Cary is titled "Escrow General Instructions". It is Defendant Lender's

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 26

Formatted: Tab stops:  2.51", Left

Advantage's "General Instructions" utilized by at least a significant portion of their escrow customers. Discovery in this case will confirm how often it has been used on others to impose upon them an arbitration clause that violates TILA.

e.      The actions of Defendant Lender's Advantage caused Ms. Cary damages in the form of participating in and helping facilitate the inducement to get her to enter into a loan transaction that was nothing like what it purported to be and without any of the required loan disclosures mandated under federal and state law. If the PATCH loan is held to be enforceable, it would result in Ms. Cary likely losing most, if not all, of the equity in her home, and would allow a third party to have complete control of all decisions to be made regarding her home for the entirety of the loan contract.

f.      Defendant Lender's Advantage has also caused Ms. Cary injury in the form of having to pay her bankruptcy lawyer to deal with PATCH's demands for payment of approximately double the amount it loaned to Ms. Cary after only two years through the filing of a Proof of Claim. She was also injured by the PATCH Defendants making that demand, even though she has not yet been required to pay any of it.

g.      Defendant Lender's Advantage helped cause the damages and injuries suffered by Ms. Cary through its intentional actions which were always designed to assist only the PATCH Defendants and were done either with the intent to harm Ms. Cary or with a callous and intentional disregard of the harm that would come to an unsophisticated borrower entering into an exceedingly complex loan transaction that purported to not even be a loan.

3.30    For all of the above reasons and based upon its actions, Ms. Cary maintains that Defendant Lender's Advantage is liable to her for violations of the Consumer Protection Act, RCW 19.86, *et seq.*

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECOND THIRD AMENDED COMPLAINT - 27

**Formatted:** Tab stops:  2.51", Left

<u>Seventh Cause of Action</u>
<u>Violations of the Truth in Lending Act, 15 U.S.C. § 1206, *et seq.*</u>
<u>Against PATCH Defendants</u>

3.~~29~~31 Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.~~28~~30 of the Causes of Action above.

3.~~30~~32 The PATCH Defendants are required by TILA to make numerous loan disclosure because they make more than five (5) loans per year and because the loan met the definition of a "federally related mortgage loan", which included:

(1) Any loan (other than temporary financing, such as a construction loan):
(i) That is secured by a first or subordinate lien on residential real property, including a refinancing of any secured loan on residential real property, upon which there is either:
(A) Located or, following settlement, will be constructed using proceeds of the loan, a structure or structures designed principally for occupancy of from one to four families (including individual units of condominiums and cooperatives and including any related interests, such as a share in the cooperative or right to occupancy of the unit);
. . . .

3.~~31~~33 For that reason, the PATCH Defendants were required to provide Ms. Cary with a Loan Estimate within three business days of the receipt of the consumer's loan application. 12 C.F.R. § 1026.19(e)(1). It was required to contain a good faith estimate of credit costs and transaction terms, based upon the best information reasonably available at the time the disclosure is provided to the consumer and use due diligence in obtaining the information. 12 C.F.R. § 1026.19(e)(1)(i); Comment 19(e)(1)(i)-1). The Estimate was required to be in writing and contain the information prescribed in 12 C.F.R. § 1026.37. The creditor must disclose only the specific information set forth in 12 C.F.R. § 1026.37(a) through (n), as shown in the

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 28

**Formatted:** Tab stops:  2.51", Left

CFPB's form in appendix H-2, consistent with 12 C.F.R. § 1026.37(o).

3.3234 The creditor is responsible under TILA for delivering the Loan Estimate or placing it in the mail no later than the third business day after receiving the application. 12 C.F.R. § 1026.19(e)(1)(iii)). The PATCH Defendants were required to use form H-24, promulgated by the CFPB. 12 C.F.R. § 1026.37(o)(3)(i). PATCH Defendants did not make any disclosures within three business days of Ms. Cary's application or at all, nor did they use form H-24.

3.3235 Rather than providing Beverly with standard loan terms which complied with federal and state lending laws, The PATCH Defendants demanded that she re-pay the loan with a percentage of her home's equity through a complex labyrinth of loan terms that no average consumer and even most experienced lawyers would be able to follow and understand, let alone calculate the interest rate, repayment requirements, etc. The Agreement also included an initial reduction in the alleged value of the Property and allowed Defendant PATCH to exclusively control the process of determining the value of the Property throughout the history of the transaction.

3.3436 Based upon these violations of TILA, Ms. Cary is entitled to rescind the loan and she seeks that recovery from the Court. 12 C.F.R. § 1026.23(a)(3). Simultaneous with the filing of this Third Amended Complaint, Ms. Cary will also send a Rescission Letter as contemplated by the statute.

Eighth Cause of Action
Violations of the Truth in Lending Act, 15 U.S.C. § 1639c(e)(3)
Against PATCH Defendants

3.3537 Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the

**Formatted:** Tab stops:  2.51", Left

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECONDTHIRD AMENDED COMPLAINT - 29

1   Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.~~34~~36 of

2   the Causes of Action above.

3          3.~~36~~38 TILA, at 15 U.S.C. § 1639c(e)(3), prohibits the imposition of an arbitration

4   clause on any mortgage loan which is secured by the borrower's primary dwelling:

5          (e) Arbitration

6              (1) In general

7
       No residential mortgage loan and no extension of credit under an open
8      end consumer credit plan secured by the principal dwelling of the
       consumer may include terms which require arbitration or any other
9      nonjudicial procedure as the method for resolving any controversy or
       settling any claims arising out of the transaction.
10

11          . . . .

12          (3) No waiver of statutory cause of action

13
       No provision of any residential mortgage loan or of any extension of
14     credit under an open end consumer credit plan secured by the principal
       dwelling of the consumer, and no other agreement between the consumer
15     and the creditor relating to the residential mortgage loan or extension of
       credit referred to in paragraph (1), shall be applied or interpreted so as to
16     bar a consumer from bringing an action in an appropriate district court of
       the United States, or any other court of competent jurisdiction, pursuant
17     to section 1640 of this title or any other provision of law, for damages or
       other relief in connection with any alleged violation of this section, any
18     other provision of this subchapter, or any other Federal law.

19

20   15 U.S.C. § 1639c(e)(3).

21          3.~~37~~39 The PATCH Defendants acted in collusion with Defendant Lenders Advantage

22   and chose to use that entity as the escrow agent in this transaction and allowed it to include a

23   mandatory arbitration clause in the closing documents which sought to impose such terms on

24   the entirety of the loan transaction, in direct contravention of federal law.

25
            3.~~38~~40 The PATCH Defendants are charged with knowing the federal and state lending
26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 30

Formatted: Tab stops:  2.51", Left

1  laws which applied to this transaction and their intentional actions in violating all of those

2  lending laws is evidenced in the entirety of the transaction, including the repeated assertions in

3  the loan documents themselves that the transaction was not a loan.

4        3.~~39~~41 The PATCH Defendants therefore violated federal law by including a

5  mandatory arbitration agreement in the subject loan terms.

6  //

7

8                    Ninth Cause of Action
                Violations of the CPA Based Upon Unlawful Imposition
9              Of a Mandatory Arbitration Clause on Plaintiff
                    In Violation of Federal Law As Against
10        Defendant First American Title Insurance Company Lenders Advantage
                        And The Patch Defendants
11

12        3.~~40~~42 Ms. Cary incorporates herein by reference as though fully set forth at length

13  each and every allegation and statement contained in all of the Sections above, including the

14  Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.~~39~~41 of

15  the Causes of Action above.

16        3.~~41~~43 As noted above, Defendant Lenders Advantage, acting in collusion with the

17  PATCH Defendants, included an arbitration clause in the escrow documents which is designed

18  to bind Ms. Cary to mandatory arbitration in connection with the making of the subject loan, in

19  direct violation of the requirements of federal law. The Truth in Lending Act, 15 U.S.C. §

20  1639c(e) prohibits the use of a binding arbitration clause in connection with the making of a

21  residential mortgage loan when it is the borrower's principal dwelling.

22        3.~~42~~44 Defendant Lenders Advantage is licensed as an escrow agent in the State of

23  California, as noted on its escrow documents and it may well be licensed to act as an escrow

24  agent in Washington if it is really the First American Title Company which is licensed in

25

26

27

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

~~SECOND~~THIRD AMENDED COMPLAINT - 31

Formatted: Tab stops:  2.51", Left

Washington by the Office of Insurance Commissioner. As such, it was required to adhere to TILA and other federal lending laws under Washington law in connection with its work as an "escrow agent" in Washington state. RCW 18.44.301(11). It is therefore charged with knowing the corresponding federal and state lending laws which regulate the making of federally regulated mortgage loans as well as knowledge of Washington escrow laws. It either has intentionally ignored TILA and federal lending laws or it has chosen not to know them and to act in collusion with lenders such as the PATCH Defendants to violate those laws. Either way, it violated acted in violation of the requirements of TILA and the Washington Escrow Agent Registration Act.

3.43 45 The PATCH Defendants also are charged with knowing federal and state lending laws, which include TILA and the express prohibition on the imposition of a mandatory arbitration clause. It chose to intentionally ignore this prohibition, craft loan documents that disavow being a loan and colluding with Defendant Lenders Advantage to impose upon Ms. Cary an unlawful mandatory arbitration clause.

3.44 46 The PATCH Defendants have made numerous misrepresentations about the terms of the contract and whether or not it is a loan, as described more completely above. In addition, it further engaged in unfair and deceptive actions by choosing an escrow agent which imposed upon Ms. Cary in the escrow documents a mandatory arbitration agreement which was prohibited by federal law.

3.45 47 The PATCH Defendants and Defendant Lenders Advantage engaged in these unfair and deceptive actions in connection with trade or commerce, the operation of their respective businesses, and they had previously when they took these actions the capacity to impose an unlawful arbitration agreement upon borrowers in the future and they continue to

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECOND THIRD AMENDED COMPLAINT - 32

Formatted: Tab stops: 2.51", Left

have the capacity to impose an unlawful arbitration agreement upon other borrowers at this

time. RCW 19.86.020; 19.86.093(c).

3.4648  Ms. Cary was injured by way of the imposition of this unlawful arbitration

agreement because she had to retain and consult with attorneys to make certain that she did not

become required to participate in this unlawful arbitration agreement and to arbitrate her claims

against the Defendants.

3.4749 All of Ms. Cary's injuries and damages were caused by the PATCH Defendants

and Defendant Lenders Advantage and they are directly responsible for those injuries and

damages.

Tenth Cause of Action
Objection to Claim
Against PATCH Defendants

3.4850 Ms. Cary incorporates herein by reference as though fully set forth at length

each and every allegation and statement contained in all of the Sections above, including the

Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.4549 of

the Causes of Action above.

3.4951 Incorporating the prior factual allegations and nine causes of action pled in this

Complaint, Defendant PATCH's proofProof of claimClaim as identified in claim number 11,

**Exhibit A**, should be disallowed as a secured claim. Any fees, accrued interest (disguised as an

equity interest or otherwise), should be also disallowed. Should the court disallow this claim in

its entirety.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ms. Cary prays for the following relief:

1.Judgment against all of the Defendants in an amount to be proven at trial for

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECONDTHIRD AMENDED COMPLAINT - 33

recovery of her out of pocket damages, as well as the value of the injuries she has suffered;

2.      Treble damages up to $25,000.00 for each of Ms. Cary's categories of damage and injury as provided under the CPA;

3.      Any statutory damages available under federal or state lending laws, including recovery of costs Ms. Cary has already paid through the escrow process;

4.      An award of attorneys' fees and costs in an amount to be proven at trial;

5.      Disallow Claim 11 in its entirety.

6.      Quiet Title in favor of Debtor, against the PATCH Defendants;

7.      Rescind the loan made by the PATCH Defendants;

8.      For injunctive relief against all of the Defendants to prevent any other Washington consumers from being harmed by the unlawful, unlicensed business activities of all of the Defendants; and

9.      For such other and further relief as the Court deems just and proper.

DATED this 4th____ day of March June, 2022.

> LAW OFFICES OF MELISSA A. HUELSMAN, P.S.
>
> By: /s/Melissa A. Huelsman
> Melissa A. Huelsman, WSBA #30935
> Attorney for Plaintiff
> 705 2nd Ave, Ste 606
> Seattle, WA 98104-1715
> Tel# 206-475-4504
> mhuelsman@predatorylending law.com
>
> LAW OFFICES OF MARK MCCLURE, PS
>
> By: /s/Mark McClure
> Mark McClure, WSBA #24393
> Attorney for Plaintiff
> 1103 W. Meeker St, Ste 101

**Formatted:** Tab stops: 2.51", Left

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECOND THIRD AMENDED COMPLAINT - 34



1    Kent, WA 98032-5751
     Tel# 253-631-6484
2    mark@mcclurelawgroup.com

3    HENRY & DEGRAAFF, PS

4
     By: /s/ Christina L. Henry
5        Christina L. Henry, WSBA #31273
         Attorney for Plaintiff
6        113 Cherry Street, PMB 58364
         Seattle, WA 98104-2205
7        Tel# 206-330-0595
         chenry@hdm-legal.com
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Formatted: Tab stops:  2.51", Left

~~SECOND~~THIRD AMENDED COMPLAINT - 35