UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEVERLY JANE CARY,<br><br>                Plaintiff,<br>   v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY LENDERS ADVANTAGE,<br><br>                Defendant.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>                Third-Party Plaintiff,<br>   v.<br><br>PATCH SERVICES LLC,<br><br>                Third-Party Defendant. | CASE NO. 2:22-cv-00538-LK<br><br>ORDER REGARDING PENDING MOTIONS |

This matter comes before the Court on Defendant and Third-Party Plaintiff First American Title Insurance Company's motion to dismiss Plaintiff Beverly Jane Cary's third amended complaint, Dkt. No. 27, as well as Third-Party Defendant Patch Services LLC's motion to dismiss First American's third-party complaint, Dkt. No. 43. For the reasons set forth below, the Court

GRANTS First American's motion to dismiss, DISMISSES First American's third-party complaint, and DENIES Patch's motion to dismiss as moot.

## I. BACKGROUND

**A.    The July 2019 Patch Agreement and Cary's Subsequent Bankruptcy Proceedings**

This dispute arises from an approximately $62,000 payment Cary obtained from Patch in July 2019 to help alleviate her growing debt. Dkt. No. 26 at 5–7, 11–12; *see* Dkt. No. 26-1 at 61–62. The payment was secured by a lien against Cary's home. Dkt. No. 26 at 5, 11; Dkt. No. 26-1 at 9, 54, 59–60, 69–81. The payment agreement, entitled "PATCH SERVICES LLC REAL ESTATE PURCHASE OPTION AGREEMENT," granted Patch an option to purchase a 57.91% interest in Cary's house or, in the event that Cary commenced voluntary bankruptcy proceedings or otherwise "defaulted," the ability to "declare all sums secured by [the Deed of Trust] immediately due and . . . invoke the power of sale[.]" Dkt. No. 26-1 at 9–11, 45–47, 58, 61, 74. First American acted as the escrow agent in connection with the transaction. Dkt. No. 26 at 3; *see also* Dkt. No. 26-1 at 69; Dkt. No. 28 at 5–9. Cary alleges that she failed to understand the agreement's "core terms" at the time of signing, Dkt. No. 26 at 12, and only discovered the nature and consequences of her contract after she filed for voluntary bankruptcy in September 2020 and Patch entered a notice of claim for an amount twice as large as the payment she initially received, *id.* at 15. *See also* Dkt. No. 26-1 at 2–7 (Patch's proof of claim filed in Cary's bankruptcy proceedings stating a claim for $122,500); *In re Beverly Jane Cary*, No. 20-12450-TWD (Bankr. W.D. Wash.) (the "2020 action").

On January 18, 2022, while the 2020 action was still ongoing, Cary initiated an adversary proceeding in the bankruptcy court against Patch, Patch Homes, Inc.,[1] and First American,

---

[1] Patch and Patch Homes, Inc. are referred to collectively herein as the "Patch Defendants."

ORDER REGARDING PENDING MOTIONS - 2

challenging the legality of these entities' actions in relation to the July 2019 agreement and the terms contained therein. Dkt. No. 1-1 at 1–2; *Cary v. Patch Servs. LLC et al.*, No. 22-01000-TWD (Bankr. W.D. Wash.). A stipulated motion to withdraw the reference was subsequently filed—and granted—in this Court. Dkt. Nos. 1, 9. While litigation continued in this case, Cary reached a settlement with the Patch Defendants in the 2020 action and subsequently dismissed them from this case with prejudice. Dkt. No. 35 at 1.

**B.    Cary's Allegations Against First American**

After the Court granted the parties' stipulated motion for withdrawal of the reference, Cary filed a third amended complaint, again alleging that both the terms of the Patch agreement and the circumstances surrounding its execution were unlawful. *See* Dkt. No. 26 at 8, 10–14; Dkt. Nos. 9, 25–26. Cary's primary claim against First American is that it included a mandatory arbitration clause in the Escrow General Provisions, which she asserts is "expressly prohibited under federal law in connection with residential mortgage loans" involving "the principal dwelling of the borrower." Dkt. No. 26 at 3; *see also id.* at 14 (alleging that First American "act[ed] in collusion with the P[atch] Defendants to further violate TILA [the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*] which prohibits the use of a mandatory arbitration agreement in connection with a federally regulated mortgage loan" (citing 15 U.S.C. § 1639c(e)(3))); *id.* at 16 ("[First American] . . . acted in collusion with the other Defendants to facilitate this unlawful loan . . . by insisting that Ms. Cary sign an escrow agreement that includes a mandatory arbitration agreement, in direct contravention of the federal lending laws.").[2]

Cary formally sets forth two causes of action against First American. *Id.* at 22–27, 31–33. First, Cary appears to assert a standalone claim for violations of the Washington Escrow Agent

---

[2] In light of Cary's dismissal of the Patch Defendants, the Court discusses only her remaining claims against First American. *See* Dkt No. 35; Sept. 6, 2022 Minute Order; Dkt. No. 43 at 5.

ORDER REGARDING PENDING MOTIONS - 3

Registration Act, Wash. Rev. Code. § 18.44.011 *et seq.* ("EARA"), under Section 18.44.301 of the Revised Code of Washington, as well as an EARA claim based on predicate TILA and Washington Consumer Protection Act, Wash. Rev. Code. § 19.86.010 *et seq.* ("CPA"), violations. *Id.* at 22–26. Second, Cary avers that by "consummat[ing] an obviously unlawful loan" and including a broad arbitration clause in the escrow provisions, First American engaged in unfair or deceptive business practices in violation of the CPA. *Id.* at 24–25, 31–32.

### C. First American's Motion to Dismiss and Third-Party Complaint Against Patch

First American moves to dismiss Cary's third amended complaint, Dkt. No. 27, and has also filed a third-party complaint against Patch for indemnity, breach of contract, contribution, and declaratory relief following the Patch Defendants' dismissal from this action, Dkt. No. 38 at 2, 5–8. Prior to filing its complaint, First American sent Patch a letter tendering for defense and indemnity of Cary's claims, which Patch rejected. *Id.* at 4–5, 15–16, 18–24.

## II.   DISCUSSION

### A. Jurisdiction

Beyond 28 U.S.C. § 1334(b), *see* Dkt. No. 9; 28 U.S.C. § 157(d), this Court has subject matter jurisdiction over Cary's claims against First American pursuant to 28 U.S.C. §§ 1331 and 1367, as Cary asserts claims based on violations of TILA, and the Court may exercise supplemental jurisdiction over her non-federal claims.

With respect to First American's claims against Patch, the Court verifies sua sponte whether it may exercise jurisdiction over the third-party complaint. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists"); *360 Acct. Sols., LLC v. TaxAssociates, Inc.*, No. EDCV-21-478-JGB (SHKx), 2022 WL 886146, at *5 (C.D. Cal. Jan. 7, 2022). "[I]t is well settled that supplemental jurisdiction exists over a properly brought third-party complaint." *St. Paul Mercury*

*Ins. Co. v. Del Webb Calif. Corp.*, No. CV 16-0209 PSG (SPx), 2017 WL 7661491, at *3 (C.D. Cal. Nov. 7, 2017) (quoting *Grimes v. Mazda N. Amer. Operations*, 355 F.3d 566, 572 (6th Cir. 2004)). Generally, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, where a court's original jurisdiction is founded "solely" on diversity grounds pursuant to 28 U.S.C. § 1332(a), the court cannot exercise supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14 . . . of the Federal Rules of Civil Procedure" if doing so "would be inconsistent with the jurisdictional requirements of section 1332." *Id.* § 1367(b). Use of the phrase "claims by plaintiffs" in Section 1367(b) is generally understood to refer to the original plaintiffs and not defendants who then assert a crossclaim or third-party claim. *Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v. Abaxis, Inc.*, 491 F. Supp. 3d 506, 516 (N.D. Cal. 2020); *see also 360 Acct. Sols.*, 2022 WL 886146, at *6.

Because federal subject matter jurisdiction in this action is not based solely on diversity grounds, the Court examines whether it may exercise supplemental jurisdiction over First American's third-party claims against Patch, which all sound in state law.[3] Based on the pleadings before it, the Court concludes that only First American's indemnity and contribution claims arise out of the same case or controversy as Cary's allegations against First American sufficient to

---

[3] First American claims diversity jurisdiction exists between itself and Patch pursuant to 28 U.S.C. § 1332(a), Dkt. No. 38 at 2, but fails to adequately allege the citizenship of Patch. Limited liability companies like Patch take on the citizenship of all of their members. *See Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006). First American alleges that Patch "is a Delaware limited liability company registered with the Washington Secretary of State" with its "principal place of business in Chicago, Illinois," but does not allege Patch's LLC membership or its members' citizenship. Dkt. No. 38 at 2. The Court cannot conclude there is diversity jurisdiction without knowing the citizenship of each of Patch's members. *See, e.g.*, *Mayo v. Specialty Contractors Nw. LLC*, No. 22-CV-00640-LK, 2023 WL 1928086, at *1 (W.D. Wash. Feb. 9, 2023).

warrant the exercise of supplemental jurisdiction. These claims are inextricably bound with the facts Cary alleges against First American related to the disputed transaction, and Patch's liability depends on the outcome of Cary's claims against First American.

With respect to First American's breach of contract claim against Patch, on the other hand, the Court finds that such claim does not depend on the outcome of Cary's suit and is not inextricably bound with the facts at issue. *See, e.g.*, *St. Paul Mercury Ins. Co.*, 2017 WL 7661491, at *4–5 (declining supplemental jurisdiction where the proof needed to support the third-party plaintiff's claims against the third-party defendants, "the types of evidence and witnesses that would be required, and the mechanisms for trying those claims [we]re unrelated to those necessary to try the original suit"). Furthermore, a third-party claim under Rule 14 is appropriate "when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative. It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim." *United States v. One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538*, 708 F.2d 444, 452 (9th Cir. 1983) (citations omitted); *see* Fed. R. Civ. P. 14(a). Here, First American's breach of contract claim is independent from the alleged facts and harms Cary sets forth in her operative complaint, so the Court does not have supplemental jurisdiction over it in this context. *See, e.g.*, *Bd. of Trs. as Trs. of Operating Eng'rs. Loc. 501 Sec. Fund v. Cnty. of Orange*, No. 8:19-CV-02117-JWH-ADSx, 2021 WL 4813755, at *8 (C.D. Cal. May 5, 2021).

Accordingly, the Court maintains subject matter jurisdiction over First American's claims against Patch only for indemnity and contribution. Nevertheless, those claims are short-lived, as the Court dismisses them without prejudice for the reasons explained below.

**B.     Requests for Judicial Notice**

The parties request that the Court take judicial notice of various documents filed in

ORDER REGARDING PENDING MOTIONS - 6

connection with the pending motions, including Cary's July 2019 agreement with Patch, the related escrow documents, and court filings reflecting the settlement agreement reached between Cary and Patch in the 2020 action. Dkt. Nos. 28, 44. Although review of a motion to dismiss for failure to state a claim is "generally limited to the face of the complaint," a court may consider "materials incorporated into the complaint by reference, and matters of which [it] may take judicial notice." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *see also Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F. Supp. 3d 856, 865–66 (W.D. Wash. 2021); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute[.]"). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Here, the Court is satisfied that it may properly consider the Patch agreement, the escrow documents, and the settlement paperwork between Cary and Patch, as they are all either incorporated into the pleadings by reference or court filings not subject to reasonable dispute. *See* Dkt. No. 26 at 3, 11 (referencing escrow agreement and Patch agreement); Dkt. No. 44 at 2 (describing the settlement filings in the bankruptcy proceeding).[4] In addition, no party has disputed the authenticity of the documents or opposed the Court taking notice of them in connection with the pending motions.

C.   **Legal Standard**

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the

---

[4] Cary also attaches Patch's proof of claim and the July 2019 Patch agreement as exhibits to her third amended complaint. Dkt. No. 26-1 at 2–81.

ORDER REGARDING PENDING MOTIONS - 7

nonmoving party. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021), *overruled on other grounds by Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such statement must be "short and plain." Fed. R. Civ. P. 8(a)(2). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (conclusory allegations of law and unwarranted inferences will not survive a motion to dismiss).

**D.      First American's Motion to Dismiss is Granted**

At this juncture, Cary's claims against First American amount to a half-baked attempt to imbue First American with responsibility for the Patch Defendants' actions and to fashion claims of collusion from whole cloth. But beyond conclusory assertions, Cary provides no basis to assign liability to First American.

      1.      <u>Cary Fails to State a TILA Claim</u>

Section 1639c(e) of the Truth in Lending Act proscribes "terms which require arbitration" in residential mortgage loans and extensions of credit under an open end consumer credit plan "secured by the principal dwelling of the consumer[.]" 15 U.S.C. § 1639c(e)(1). Subsection (e)(3) further provides that:

    No provision of any residential mortgage loan or of any extension of credit under

ORDER REGARDING PENDING MOTIONS - 8

>an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in paragraph (1), shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court . . . for damages or other relief in connection with any alleged violation of this section[.]

*Id.* § 1639c(e)(3).

Cary avers that First American "actively engaged" with the Patch Defendants to include an arbitration clause in the Escrow General Provisions that encompasses disputes arising from the Patch agreement itself, in violation of Section 1639c(e)(3). Dkt. No. 26 at 25–26, 31; *see also id.* at 3 ("Other entities in the making of the loan, such as escrow companies, cannot assist lenders in trying to avoid that requirement by including a mandatory arbitration clause in other contractual terms."); *id.* at 14 (same).

For its part, First American first argues that Cary's TILA claims are time-barred under Section 1640(e), which limits the commencement of actions to "one year from the date of the occurrence of the violation[.]" Dkt. No. 27 at 9. Because Cary signed the relevant documents in July 2019, Dkt. No. 26 at 11, and has not provided any basis for a different date of violation, any of her claims under Section 1640(e) are time-barred. However, it appears that some of Cary's claims are based on alleged violations of Section 1639c or other listed sections which may be brought "before the end of the 3-year period beginning on the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Furthermore, to the extent Cary levies CPA claims against First American based on violations of TILA, those claims are governed by the CPA's four-year statute of limitations. Wash. Rev. Code § 19.86.120; *Hoffman v. Transworld Sys., Inc.*, 806 F. App'x 549, 552 (9th Cir. 2020).

Nevertheless, even assuming that Cary's TILA claims are not time-barred, and assuming without deciding that the Patch agreement constitutes a residential mortgage loan or an extension

ORDER REGARDING PENDING MOTIONS - 9

of open end credit under a consumer credit plan secured by Cary's principal dwelling, Cary has not alleged any basis to hold First American liable under TILA. TILA permits plaintiffs to seek damages from *creditors*, 15 U.S.C. § 1640(a), and Cary expressly alleges that First American "acted as an escrow agent" for the disputed transaction; not that it was a creditor, Dkt. No. 26 at 3. To the extent there is a basis to apply TILA to First American under these circumstances, Cary has not identified it. *See* 15 U.S.C. § 1602(g) (defining "creditor" as a person who both "regularly extends . . . consumer credit" and "is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness"); *see also Bumatay v. Fin. Factors, Ltd.*, No. CIV 10-00375 JMS/LEK, 2010 WL 3724231, at *8 (D. Haw. Sept. 16, 2010) ("First Hawaii only performed escrow services for the 2007 loan transaction" and "was not a lender, creditor, or an assignee"; therefore "First Hawaii cannot be liable for TILA violations"); *Manuel v. Discovery Home Loans, LLC*, No. C10-01185-JSW, 2010 WL 2889510, at *3 (N.D. Cal. July 22, 2010) (because "neither [escrow holder nor loan servicer] was obligated to make TILA disclosures in connection with Plaintiffs' loan, neither party can be liable for violations of TILA"); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 589 F. Supp. 2d 987, 992 (N.D. Ill. 2008) (dismissing TILA claims against escrow company because "TILA burdens only *creditors* with disclosure obligations"); *Phleger v. Countrywide Home Loans, Inc.*, No. C07-1686-SBA, 2008 WL 65771, at *6 (N.D. Cal. Jan. 4, 2008) (dismissing TILA claim because "[a]n escrow agent is not . . . a creditor for purposes of TILA" (citations omitted)).[5]

---

[5] To the extent Cary is arguing that First American was somehow obligated to make required loan disclosures under TILA, *see* Dkt. No. 26 at 25–26; Dkt. No. 30 at 3–4, she has not plausibly alleged that First American had any duty to do so. *See Denaxas v. Sandstone Ct. of Bellevue, LLC*, 63 P.3d 125, 129 (Wash. 2003) (describing an escrow agent's duties generally); *Manuel*, 2010 WL 2889510, at *3 ("[T]he escrow holder for the transaction . . . cannot be considered the original creditor or lender," and therefore was not "obligated to make TILA disclosures in connection with Plaintiffs' loan"); *see also Taylor v. Gorilla Cap., Inc.*, No. 6:18-CV-648-MC, 2018 WL 3186946, at *6 (D. Or. June 28, 2018) (escrow agent not required to make TILA disclosures); *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1135–36 (D. Haw. 2011) (same). Nor has Cary otherwise identified any legal basis to hold that First American had a duty to "police" her transaction with the Patch Defendants or otherwise protect her interests in that transaction.

Furthermore, as discussed below with regard to Cary's claims of collusion, the Court finds no basis in the complaint to infer that First American "was actively engaged" with the Patch Defendants to include an arbitration clause as a means of sidestepping the requirements of Section 1639c(e). More fundamentally, no one is "appl[ying] or interpret[ing]" the Patch agreement or the General Provisions "so as to bar [Cary] from bringing an action in an appropriate district court." 15 U.S.C. § 1639c(e)(3). Even assuming that the arbitration clause were broad enough to encompass and apply to Cary's dispute with Patch, that dispute was settled in the bankruptcy proceedings—without involvement of an arbitrator.

Accordingly, the Court dismisses Cary's claims predicated on TILA.

2.   Cary Fails to State an EARA Claim

The EARA "is a comprehensive scheme that regulates the activities of escrow agents." *Est. of Jordan by Jordan v. Hartford Acc. & Indem. Co.*, 844 P.2d 403, 406 (Wash. 1993). Cary maintains that First American violated the EARA, which prohibits escrow agents from, among other things:

> (1) Directly or indirectly employ[ing] any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person;
>
> (2) Directly or indirectly engag[ing] in any unfair or deceptive practice toward any person; . . .
>
> (4) Knowingly mak[ing], publish[ing], or disseminat[ing] any false, deceptive, or misleading information in the conduct of the business of escrow, or relative to the business of escrow or relative to any person engaged therein; . . . [and]
>
> (11) Fail[ing] to comply with any requirement of any applicable federal or state act including the truth in lending act, 15 U.S.C. Sec. 1601 et seq. and Regulation Z, 12 C.F.R. Sec. 226 . . . as these acts existed on January 1, 2007, or such subsequent date as may be provided by the department by rule, or any other applicable escrow activities covered by the acts[.]

Wash Rev. Code § 18.44.301(1)–(2), (4), (11). First American argues that the EARA does not provide a private right of action, and that in any event, Cary has not alleged a violation of the

ORDER REGARDING PENDING MOTIONS - 11

EARA itself or by virtue of a corresponding CPA or TILA violation. In her opposition brief, Cary does not rebut First American's contention that the EARA contains no private right of action. *See generally* Dkt. No. 30. Accordingly, the Court interprets Cary's failure to substantively respond to this aspect of First American's motion as an admission that it has merit. *See NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1341 (W.D. Wash. 2021) (construing "the lack of substantive response as an admission that defendants' motions have merit" under Local Civil Rule 7(b)(2)); *cf. Ladunskiy v. First Horizon Corp.*, No. C12-5637-BHS, 2012 WL 4467652, at *5 (W.D. Wash. Sept. 26, 2012) (dismissing EARA claim where plaintiff failed to assert that it was applicable); Wash. Rev. Code §§ 18.44.400–490 (granting enforcement authority under the EARA to the Director of the Washington Department of Financial Institutions); Wash. Admin. Code § 208-680-610–660 (same).

However, even assuming Cary could bring a claim against First American under the EARA, she fails to state a claim for relief. Beginning with Section 18.44.301(1) and (4), Cary's third amended complaint is devoid of nonconclusory allegations concerning a "scheme, device, or artifice to defraud or mislead," or giving rise to the inference that First American knowingly made, published, or disseminated "false, deceptive, or misleading information in the conduct of the business of escrow." Cary alleges that First American participated in the July 2019 transaction as an escrow agent, provided the Escrow General Provisions for her to sign, executed the Deed of Trust, and included an arbitration clause in the Escrow General Provisions. Dkt. No. 26 at 7, 25–26. Without more, such allegations do not allow "the court to draw the reasonable inference that the [First American] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Cary repeatedly avers that First American "colluded" with Patch to "facilitate" an unlawful loan, *see* Dkt. No. 26 at 14, 16, 30–32, but such allegations amount to cursory accusations and unsupported legal

ORDER REGARDING PENDING MOTIONS - 12

conclusions absent further factual context elevating First American's role above the perfunctory.[6] In addition, for the reasons stated herein with respect to Cary's claims under TILA and the CPA, the Court finds that Cary similarly fails to plausibly allege that First American "[d]irectly or indirectly engage[d] in any unfair or deceptive practice," or flouted "any requirement of any applicable federal or state act" in its capacity as an escrow agent. Wash Rev. Code § 18.44.301(2), (11). Therefore, Cary's claims under the EARA are dismissed.

### 3. Cary Fails to State a CPA Claim

To establish a private CPA claim, a plaintiff must show: "(1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to the unfair or deceptive act." *Lyons v. Homecomings Fin. LLC*, 770 F. Supp. 2d 1163, 1167 (W.D. Wash. 2011); *see Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Plaintiffs alleging an injury under the CPA are required to establish all five elements. *Michael v. Mosquera-Lacy*, 200 P.3d 695, 699 (Wash. 2009). "Whether a particular act or practice is 'unfair or deceptive' is a question of law." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 894 (Wash. 2009). The Washington Supreme Court has held that "[a]n act or practice is per se unfair or deceptive if it violates a statute declaring the conduct to be an unfair or deceptive act or practice in trade or commerce." *Schiff v. Liberty Mut. Fire Ins. Co.*, 520 P.3d 1085, 1092 (Wash. Ct. App. 2022) (citing *Hangman Ridge*, 719 P.2d at 535). Alternatively, a CPA claim may be based upon "an act or practice that has the capacity to deceive substantial portions

---

[6] First American and Cary dispute whether Cary's allegations sound in fraud, and as a result, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See* Dkt. No. 27 at 10–11; Dkt. No. 30 at 7–9; Dkt. No. 33 at 3–5. Because the Court concludes that Cary has failed to state a claim for relief under Rule 8's general pleading standard, it does not reach this issue. If Cary is attempting to claim that First American aided and abetted Patch in securing a fraudulent agreement, she fails to allege any nonconclusory facts establishing First American's "knowledge of and assistance with deceptive or fraudulent conduct." *Brashkis v. Hyperion Cap. Grp., LLC*, No. 3:11-CV-05635-RBL, 2011 WL 6130787, at *3 (W.D. Wash. Dec. 8, 2011).

of the public" or "an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

Cary invokes the CPA in both of her causes of action against First American. Dkt. No. 26 at 25–27, 31–32. Specifically, she alleges that First American "engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce'" by including the above-mentioned arbitration clause in the Escrow General Provisions in violation of TILA. *Id.* at 25 (quoting Wash. Rev. Code § 19.86.020). She also claims that First American's participation "in an escrow for a transaction that purported not to be a loan, but which it treated as a loan for purposes of the escrow, including the execution of a Deed of Trust," constituted an "'unfair' and 'deceptive' act." *Id.* at 26 (emphasis omitted).[7]

Cary's convoluted allegations do not state a claim under the CPA. Again, the conclusory assertions in her complaint do not establish any unfair or deceptive practice on the part of First American, nor do they connect the dots between First American and the Patch Defendants to show that First American "colluded" with Patch to "facilitate" an unlawful loan. Nor do the allegations establish causation: Cary has not plausibly demonstrated that First American's participation in the transaction as an escrow agent and inclusion of an arbitration clause in the escrow General Instructions "facilitate[d] the inducement" of Cary to sign the Patch agreement, Dkt. No. 26 at 26, or caused her to incur attorney's fees beyond those associated with preparation of her CPA claim, *see id.* at 27 (alleging that First American somehow "caused Ms. Cary injury in the form of having to pay her bankruptcy lawyer to deal with PATCH's demands for payment of approximately

---

[7] In her opposition to First American's motion to dismiss, Cary states that she is not alleging a per se unfair or deceptive practice, i.e., an unfair or deceptive practice derived from conduct labeled unfair or deceptive under another statute. Dkt. No. 30 at 2, 9; *see also id.* at 9–10 (asserting that it was First American's "facilitation of an escrow closing by the unlicensed Patch Defendants to secure their so-called Purchase Option Agreement which disavows being a loan, in spite of the use of a Deed of Trust, which secures debt, [that] constitute[d] unfair and deceptive actions"). But she premises her CPA claims entirely on alleged violations of TILA and the EARA, Dkt. No. 26 at 23–27, 31–33, and repeats those allegations in her response, *see, e.g.*, Dkt. No. 30 at 2, 9–10, 12–14.

ORDER REGARDING PENDING MOTIONS - 14

double the amount it loaned to Ms. Cary," although "she has not yet been required to pay any of it"). *See Kolbet v. Selene Fin. LP*, No. C19-0439-JLR, 2019 WL 2567352, at *8 (W.D. Wash. June 21, 2019) ("[A] plaintiff asserting a CPA claim must make 'some demonstration of a causal link' between the alleged unfair or deceptive act and the plaintiff's injury." (quoting *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*, 391 P.3d 582, 587 (Wash. Ct. App. 2017))); *Panag*, 204 P.3d at 902. Likewise, Cary's allegations that First American "helped cause the damages and injuries suffered by [her] through its intentional actions . . . done either with the intent to harm [her] or with a callous and intentional disregard of the harm that would come," are wholly conclusory. Dkt. No. 26 at 27.[8]

Accordingly, Cary's CPA claims are dismissed.

### 4. Cary May Seek Leave to Amend Claims Other Than Under Section 1640(e)

"In dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If Cary believes she can amend her claims—other than those under Section 1640(e)—in a manner consistent with her Rule 11 obligations[9] to remedy the deficiencies identified above, she may file a motion for leave to amend with a proposed pleading for the Court's consideration no later than 14 days from the date of this Order. *Babrauskas v. Paramount Equity Mortg.*, No. C13-0494-RSL, 2013 WL 5743903, at *6 (W.D. Wash. Oct. 23, 2013); *see also* LCR 15. If Cary fails to timely comply with this Order or fails to file an amended pleading that meets the required pleading standard and corrects the noted

---

[8] In her response to the motion to dismiss, Cary introduces new factual allegations that are absent from her complaint. *See, e.g.*, Dkt. No. 30 at 11. She may not amend her complaint via her response brief. *Riser v. Cent. Portfolio Control Inc.*, No. 3:21-CV-05238-LK, 2022 WL 2209648, at *4 n.1 (W.D. Wash. June 21, 2022).

[9] *See* Fed. R. Civ. P. 11(b)–(c); LCR 11(c).

ORDER REGARDING PENDING MOTIONS - 15

deficiencies, the Court will dismiss her complaint with prejudice.

### E. Patch's Motion to Dismiss First American's Third-Party Claims is Denied as Moot

In light of the Court's dismissal of all of Cary's pending claims against First American, the Court need not reach First American's third-party claims. *See, e.g.*, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861-RSM, 2013 WL 486293, at *2 (W.D. Wash. Feb. 7, 2013) (summarily dismissing third-party claims for indemnity and contribution when rendered moot by the dismissal of the underlying claims against the third-party plaintiff). Thus, the Court dismisses First American's first, third, and fourth causes of action for implied indemnity, contractual indemnity, and contribution as moot. Dkt. No. 38 at 5–7. And as explained above, the Court lacks subject matter jurisdiction over First American's second cause of action for breach of contract.

## III. CONCLUSION

For the reasons stated herein, the Court hereby ORDERS:

(1) First American's motion to dismiss Cary's third amended complaint, Dkt. No. 27, is GRANTED;

(2) Cary may file a motion to seek leave to amend her pleading consistent with this Order within 14 days; and

(3) The Court DISMISSES First American's first, third, and fourth causes of action as moot, and DISMISSES its second cause of action without prejudice for lack of subject matter jurisdiction;

(4) Patch's motion to dismiss First American's third-party complaint, Dkt. No. 43, is DENIED AS MOOT.

Dated this 13th day of March, 2024.

Lauren King
United States District Judge